# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION,

*Plaintiff*,

vs.

Case No. 25-cv-2597-TSC

U.S. DEPARTMENT OF JUSTICE
et al.,

*Defendants*.

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

   I.   The Trump Administration Reverses its Position on Releasing the "Epstein Files." ......... 2

   II.  Media Coverage of the Trump Administration's Reversal on Releasing the "Epstein Files" Raises Persistent Questions about Government Integrity. ...................................... 7

   III. DFF Submits FOIA Requests Regarding the Trump Administration's Handling of the Epstein Matter and Requests Expedited Processing. ......................................................... 8

LEGAL STANDARD ......................................................................................................... 10

ARGUMENT ...................................................................................................................... 11

   I.   DFF's Epstein Matter Requests Involve "A Matter of Widespread and Exceptional Media Interest." ......................................................................................................................... 12

   II.  The Extensive Media Coverage of the Trump Administration's Handling of the Epstein Matter Contains "Possible Questions About the Government's Integrity That Affect Public Confidence." ......................................................................................................... 13

CONCLUSION .................................................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

*ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24 (D.D.C. 2004) ........................................ 12

*Am. Oversight v. U.S. Dep't of Just.*, 292 F. Supp. 3d 501 (D.D.C. 2018) ......................... 12, 13

*Brennan Ctr. for Just. at N.Y.U. Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87 (D.D.C. 2020) ......................................................................... 12

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354 (D.D.C. 2020) ......................................................................... 13

*Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ......................... 11

### STATUTES AND REGULATIONS

5 U.S.C. § 552 ......................................................................... 9, 10, 11

28 C.F.R. pt. 16, app. I ......................................................................... 10

28 C.F.R. § 16.5 ......................................................................... 1, 9, 10, 11, 12, 13

Fed. R. Civ. P. 56 ......................................................................... 11

### OTHER AUTHORITIES

*People v. Trump,* No. 71543/23 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 30, 2023) ................................. 6

*United States v. Trump*, No. 1:23-cr-00257 (D.D.C. Aug. 1, 2023) ............................................. 6

*63% of Voters Disapprove of The Trump Administration's Handling of the Jeffrey Epstein Files*, Quinnipiac Univ. Nat'l Poll (July 16, 2025), https://perma.cc/K5BM-JPRR ......................................................... 8, 18

Aaron Blake, "*Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them*," CNN (July 24, 2025), https://perma.cc/7BFF-6KV5 ......................................................... 7, 15

Aaron Katersky et al., *Ghislaine Maxwell Received Limited Immunity During Meetings with Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://perma.cc/4Y9B-WQ8S ......................................................... 6

Adam Goldman et al., *How a Frantic Scouring of the Epstein Files Consumed the Justice Dept.*, N.Y. Times (July 24, 2025), https://perma.cc/RLL2-2BVP ......................... 5

Andrew Skerritt et al., *Epstein associate Ghislaine Maxwell to meet with deputy attorney general again today*, Wash. Post (July 25, 2025), https://perma.cc/U23B-NSVD ................................................................................ 6

Anna Commander, *Republican Targeted by Trump Says Epstein Issue 'Not Going to Go Away*, Newsweek (July 23, 2025), https://perma.cc/8YHB-FUNE ...................... 8, 18

Bart Jansen et al., "*Bondi pledged 'transparency' on Epstein files, but grapples with how much*," USA Today (July 27, 2025), https://perma.cc/6LGV-RYNZ......... 7, 8, 14, 16

Brian Bennett, *Trump: Ghislane Maxwell Pardon 'Inappropriate' to Talk About 'Right Now,'* TIME (July 28, 2025), https://perma.cc/F8CN-GTEF?type=image ...................................................... 6

Brian Mann, *Court documents reveal names of powerful men allegedly linked to Jeffrey Epstein*, NPR (Jan. 4, 2024), https://perma.cc/3N37-BCDX ................................. 3

Chantelle Lee, *Democratic Congressman Introduces Resolution Demanding Trump Release Epstein Files: 'I'm Very Concerned About the Way They Handled This Case*," TIME (July 14, 2025), https://perma.cc/HX5M-MB7Q?type=image .................................... 3

Chris Cameron, *Trump Really Wants to Stop Talking About Epstein: A Timeline*, N.Y. Times (July 23, 2025), https://perma.cc/U4GB-NJEC ................................................. 7, 15

Conor Murray, *Epstein Files Land No New Revelations—Despite Big Promises Throughout Campaign*, Forbes (Mar. 1, 2025), https://perma.cc/ND5U-6QFG ............... 4

David Morgan, *Epstein furor undermines public trust, Republican election hopes, two US lawmakers say*, Reuters (July 27, 2025), https://perma.cc/7H7D-T95C .......... 7, 14, 17

Devlin Barrett et al., *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, N.Y. Times (July 28, 2025), https://perma.cc/A9RQ-T9S2 ................................................................................ 3

Elizabeth Elkind, *'Not Going Away': Inside the Epstein Drama That's Thrown House GOP Into Chaos*; Fox News (July 22, 2025), https://perma.cc/KX6C-G39A............. 7, 14

Eric Tucker et al., *Epstein 'client list' doesn't exist, Justice Department says, walking back theory Bondi had promoted*, Associated Press (July 7, 2025), https://perma.cc/EE5T-RENV ................................................................................ 7, 14

FBI Memo, July 2025, U.S. Dep't of Just., https://perma.cc/DRE5-PXTZ (last visited Aug. 1, 2025)............................................................................. 5, 14

Federal Bureau of Prisons, *Inmate Locator: Ghislaine Maxwell*, U.S. Dep't of Just., https://perma.cc/GG27-ZLAP (search conducted Aug. 10, 2025) ..................................... 2

Glenn Thrush et al., "*After Ghislaine Maxwell Interview, Concerns Mount Over Possibility of Pardon*," N.Y. Times (July 25, 2025), https://perma.cc/P4Y2-X2HL ........................................................................ 8, 16

Hady Mawajdeh et al., *Why doesn't Donald Trump want to release the Epstein Files?*, Vox (July 17, 2025), https://perma.cc/FQ29-HR5H .................................. 7, 14, 15

Haley Chi-Sing, *Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files*, FOX News (Feb. 21, 2025), https://perma.cc/Y697-N6J7 ............................................................... 4, 14

Jason Leopold, *FBI Redacted Trump's Name in Epstein Files for Privacy Reasons*, Bloomberg (Aug. 1, 2025), https://perma.cc/Q2WV-EAXV .............................................. 5

Jordana Comiter, *What Are the Epstein Files? Everything to Know About the Classified Documents Related to Jeffrey Epstein's Criminal History*, People (July 30, 2025), https://perma.cc/Z4PP-68UW ...................................... 3

Kenneal Patterson, *Trump Savages MAGA 'Lunatics' Demanding More Epstein Files*, The Daily Beast (July 19, 2025), https://perma.cc/838H-GGGL ....................................... 3

Khadeeja Safdar et al., *Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump*, Wall St. J. (July 17, 2025), https://perma.cc/4P46-KD4W ............................................................ 5

Laura Loomer (@LauraLoomer), X (Feb. 27, 2025, 1:54 pm), https://perma.cc/7B8T-8AAU ................................................................ 4

Lex Fridman, *Transcript for Donald Trump Interview*, at 44:59-45:13 (Sept. 3, 2024), https://perma.cc/4BQH-VFAJ ........................................................... 4

Maggie Haberman et al., *Attorney General Told Trump His Name Appeared in Epstein Files*, N.Y. Times (July 23, 2025), https://perma.cc/T4BE-HQXG ............... 7, 15

Nandita Bose et al., *Trump sues Wall Street Journal over Epstein report, seeks $10 billion*, Reuters (July 19, 2025), https://perma.cc/7E2M-2RTF ........................................ 6

Nik Popli, *These House Republicans Want All of the Epstein Files Released*, TIME (July 21, 2025), https://perma.cc/8BST-83F7?type=image ................................ 3

Perry Stein et al., *The Trump Trial: Inside counsel*, Wash. Post (Nov. 17, 2024), https://perma.cc/7BNP-GTZC ............................................................ 6

Philip Rotner, *Why the Huge Conflicts of Interest Among Trump's Epstein Team Matter*, The Bulwark (July 25, 2025), https://perma.cc/K9SA-TU7A .................... 7, 8, 17

Press Release, DOJ Off. of the Inspector Gen., *DOJ OIG Releases Report on the BOP's Custody, Care, and Supervision of Jeffrey Epstein at the Metropolitan*

*Correctional Center in New York, New York* (June 27, 2023),
https://perma.cc/78B3-JBYM ................................................................ 2

Press Release, U.S. Attorney's Off. for the S. Dist. of N.Y., *Jeffrey Epstein Charged
in Manhattan Federal Court with Sex Trafficking of Minors*, (July 8, 2019),
https://perma.cc/QZ7W-XSDX ................................................................ 2

Press Release, U.S. Dep't of Just., *Attorney General Pamela Bondi Releases First
Phase of Declassified Epstein Files* (Feb. 27, 2025),
https://perma.cc/X8GA-RY7J................................................................ 4

Rep. Anna Paulina Luna (R-Florida) (@RepLuna), X (Feb. 27, 2025, 2:06 pm),
https://perma.cc/8VKH-SHJT................................................................ 4

Sadie Gurman et al., *Justice Department Told Trump in May That His Name Is
Among Many in the Epstein Files*, Wall St. J. (July 23, 2025),
https://perma.cc/8VE5-QKWD................................................................ 5, 6

Sarah Ewall-Wice, *Ghislaine Handed DOJ 100 Names in Shameless Pardon Quid
Pro Quo*, Daily Beast (July 26, 2025), https://perma.cc/UF5C-ZR8X........................ 8, 16

Sarah N. Lynch, *Disgraced money manager Jeffrey Epstein dead in apparent suicide*,
Reuters (Aug. 10, 2019), https://perma.cc/P2GG-CKNA ................................... 2

Solcyré Burga, *Sex Trafficker Ghislaine Maxwell Moved to Minimum Security Prison
a Week After Meeting with Trump DOJ*, TIME (Aug. 1, 2025),
https://perma.cc/X6MJ-2F2J?type=image .......................................... 6

Todd Blanche (@DAGToddBlanche), X (July 24, 2025, 7:03 PM),
https://perma.cc/9GPG-BWE8................................................................ 6

U.S. Attorney's Off. for the S. Dist. of N.Y., *Ghislaine Maxwell Sentenced to 20
Years in Prison for Conspiring with Jeffrey Epstein to Sexually Abuse Minors*,
U.S. Dep't of Just. (June 28, 2022), https://perma.cc/U9KP-LXGS ................................ 2

U.S. Attorney's Off. for the S. Dist. of N.Y., *Statement of U.S. Attorney Damian
Williams on the Verdict in U.S. v. Ghislaine Maxwell*, U.S. Dep't of Just.
(Dec. 29, 2021), https://perma.cc/X3DV-5X84................................................ 2

U.S. Attorney's Off. for the S. Dist. of N.Y., *United States v. Jeffrey Epstein, 19 Cr.
490 (RMB) – Victim-Witness Services*, U.S. Dep't of Just.,
https://perma.cc/5L7A-LRUE (last visited Aug. 10, 2025)................................ 2

**INTRODUCTION**

Plaintiff Democracy Forward Foundation ("DFF") submitted Freedom of Information Act ("FOIA") requests to shed light on a matter—the Trump Administration's handling of the Jeffrey Epstein case and case files—that is the subject of extraordinary media attention and public interest and that raises serious questions about high-ranking officials' veracity and apparent conflicts of interest. These requests squarely meet Defendant Department of Justice's ("DOJ") regulatory standard for expedited processing of FOIA requests that concern matters that involve "widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv), yet DOJ has not granted expedited processing.

DFF asks this Court to grant its summary judgment motion and hold that DFF is entitled to expedited processing of its FOIA requests submitted to Defendants DOJ and the Federal Bureau of Investigation ("FBI") for records pertaining to the Trump Administration's handling of the Jeffrey Epstein matter. In its requests for expedited processing, DFF provided dozens of news reports concerning the Trump Administration's handling of the Epstein matter; DFF also explained how these reports raise questions about government integrity that affect public confidence—from the accuracy of the Attorney General's statements about the contents of the Epstein case files to concerns that documents are being withheld and leniency is being contemplated for an Epstein co-conspirator because of the personal and political costs to the President of making information about the case public.

There is no genuine dispute as to any material fact that DFF's requests involve (1) "a matter of widespread and exceptional media interest" and that (2) that matter—the Trump Administration's handling of the Epstein matter—contains "possible questions about the

1

government's integrity that affect public confidence." DFF is, thus, entitled to expedited processing of its Epstein-related FOIA requests under 28 C.F.R. § 16.5(e)(1)(iv) as a matter of law.

## BACKGROUND

**I.    The Trump Administration Reverses its Position on Releasing the "Epstein Files."**

On July 6, 2019, hedge-fund manager Jeffrey Epstein was arrested on federal charges related to sex trafficking.[1] The unsealed indictment of Epstein alleged that, between 2002 and 2005, he recruited dozens of underage girls to his residences in New York City and Palm Beach, Florida for sexual acts in exchange for money, and often paid them to recruit additional minors to do the same.[2] Epstein pled not guilty but died by suicide in jail on August 10, 2019.[3] On August 29, 2019, the indictment was dismissed in light of Epstein's death.[4] On December 29, 2021, Epstein's associate, Ghislaine Maxwell, was convicted of conspiring with Epstein to traffic girls for sex,[5] and she is currently serving a 20-year sentence in federal prison.[6]

---

[1] *See* Press Release, U.S. Attorney's Off. for the S. Dist. of N.Y., *Jeffrey Epstein Charged in Manhattan Federal Court with Sex Trafficking of Minors*, U.S. Dep't of Just. (July 8, 2019), https://perma.cc/QZ7W-XSDX.

[2] *Id.*

[3] *See* Sarah N. Lynch, *Disgraced money manager Jeffrey Epstein dead in apparent suicide*, Reuters (Aug. 10, 2019), https://perma.cc/P2GG-CKNA; *see also* Press Release, DOJ Off. of the Inspector Gen., *DOJ OIG Releases Report on the BOP's Custody, Care, and Supervision of Jeffrey Epstein at the Metropolitan Correctional Center in New York, New York* (June 27, 2023), https://perma.cc/78B3-JBYM.

[4] *See* U.S. Attorney's Off. for the S. Dist. of N.Y., *United States v. Jeffrey Epstein, 19 Cr. 490 (RMB) – Victim-Witness Services*, U.S. Dep't of Just., https://perma.cc/5L7A-LRUE (last visited Aug. 10, 2025).

[5] U.S. Attorney's Off. for the S. Dist. of N.Y., *Statement of U.S. Attorney Damian Williams on the Verdict in U.S. v. Ghislaine Maxwell*, U.S. Dep't of Just. (Dec. 29, 2021), https://perma.cc/X3DV-5X84.

[6] U.S. Attorney's Off. for the S. Dist. of N.Y., *Ghislaine Maxwell Sentenced to 20 Years in Prison for Conspiring with Jeffrey Epstein to Sexually Abuse Minors*, U.S. Dep't of Just. (June 28, 2022), https://perma.cc/U9KP-LXGS; Federal Bureau of Prisons, *Inmate Locator: Ghislaine Maxwell*, U.S. Dep't of Just., https://perma.cc/GG27-ZLAP (search conducted Aug. 10, 2025).

In January 2024, unsealed court documents disclosed the names of dozens of powerful men with alleged connections to Epstein, including President Donald J. Trump, British Royal Prince Andrew, former President Bill Clinton, lawyer Alan Dershowitz, and others.[7] Persistent questions remain about what the government uncovered during its investigation into Epstein's criminal activity. And there is broad-based public pressure for the government to release records that are often referred to as the "Epstein files."[8] There is widespread public belief that the Epstein files contain a roster that Epstein kept of powerful clients to whom he trafficked underaged girls. This purported list has become known as the "Epstein list" or the "client list."[9]

Giving credence to this theory, in 2024, then Presidential candidate Trump said in an interview that, as President, he would "probably" release the "Epstein list":

> [Interviewer]: It's just very strange for a lot of people, that the list of clients that went to [Epstein's private] island has not been made public.
>
> [Then Presidential candidate Trump]: It's very interesting, isn't it? It probably will be, by the way, probably.[10]

---

[7] *See* Brian Mann, *Court documents reveal names of powerful men allegedly linked to Jeffrey Epstein*, NPR (Jan. 4, 2024), https://perma.cc/3N37-BCDX; *see also, e.g.*, Deposition of Johanna Sjoberg at 18, 78, *Giuffre v. Maxwell*, No. 1:15-cv-07433 (S.D.N.Y. Jan. 3, 2024), ECF No. 1320-12.

[8] *See* McGrath Declaration ("Decl.") Exhibit ("Ex.") 3, Follow-up Regarding Request for Expedited Processing (citing s*ee e.g.*, Nik Popli, *These House Republicans Want All of the Epstein Files Released*, TIME (July 21, 2025), https://perma.cc/8BST-83F7?type=image; Chantelle Lee, *Democratic Congressman Introduces Resolution Demanding Trump Release Epstein Files: 'I'm Very Concerned About the Way They Handled This Case*," TIME (July 14, 2025), https://perma.cc/HX5M-MB7Q?type=image;

Kenneal Patterson, *Trump Savages MAGA 'Lunatics' Demanding More Epstein Files*, The Daily Beast (July 19, 2025), https://perma.cc/838H-GGGL; Jordana Comiter, *What Are the Epstein Files? Everything to Know About the Classified Documents Related to Jeffrey Epstein's Criminal History*, People (July 30, 2025), https://perma.cc/Z4PP-68UW).

[9] *See* McGrath Decl. Ex. 3 (citing Devlin Barrett et al., *What to Know About the Epstein Files, a Perfect Recipe for Conspiracy Theories*, N.Y. Times (July 28, 2025), https://perma.cc/A9RQ-T9S2).

[10] *See* McGrath Decl. Ex. 1, Request for Expedited Processing for Recently Submitted Requests

Following President Trump's reelection and Inauguration, on February 21, 2025, Attorney General Pam Bondi was asked in a televised interview whether DOJ would "really" "be releasing the list of Jeffrey Epstein's clients," to which Attorney General Bondi replied: "It's sitting on my desk right now to review. That's been a directive by President Trump."[11]

Days after Attorney General Bondi publicly stated the Epstein client list was "sitting on [her] desk" for review, DOJ released "[t]he first phase of declassified [Epstein] files," which contained no "client list," but rather—by DOJ's own characterization—comprised mostly materials that were already publicly available.[12] At the time of the "first phase" release, media outlets reported the release "frustrated critics across both parties, including conservative influencers and members of Congress"[13] who suggested the Trump Administration was purposefully withholding information.[14]

Following this initial release and subsequent criticism, the FBI and DOJ reportedly conducted a "frantic scouring" of the Epstein files for, among other things, any references to

---

2 (citing Lex Fridman, *Transcript for Donald Trump Interview*, at 44:59-45:13 (Sept. 3, 2024), https://perma.cc/4BQH-VFAJ); *see also id.* Ex. 2, Additional Expedited FOIA Requests (citing same).

[11] *See* McGrath Decl. Exs. 1, 2 (citing Haley Chi-Sing, *Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files*, FOX News (Feb. 21, 2025), https://perma.cc/Y697-N6J7).

[12] Press Release, U.S. Dep't of Just., *Attorney General Pamela Bondi Releases First Phase of Declassified Epstein Files* (Feb. 27, 2025), https://perma.cc/X8GA-RY7J (stating "[t]he first phase of declassified files largely contains documents that have been previously leaked but never released in a formal capacity by the U.S. Government"); *see also* McGrath Decl. Exs. 1, 2.

[13] *See* McGrath Decl. Ex. 3 (citing Conor Murray, *Epstein Files Land No New Revelations—Despite Big Promises Throughout Campaign*, Forbes (Mar. 1, 2025), https://perma.cc/ND5U-6QFG).

[14] *See* McGrath Decl. Ex. 3 (citing *id.* (quoting Laura Loomer (@LauraLoomer), X (Feb. 27, 2025, 1:54 pm), https://perma.cc/7B8T-8AAU ("[T]he American people can't trust the validity of the Epstein files released today.") and Rep. Anna Paulina Luna (R-Florida) (@RepLuna), X (Feb. 27, 2025, 2:06 pm), https://perma.cc/8VKH-SHJT ("GET US THE INFORMATION WE ASKED FOR!"))).

President Trump.[15] A team of FBI employees was reportedly tasked with redacting references to President Trump in the files and found "numerous references."[16] Media outlets further reported that this review was largely completed by mid-April[17] and that shortly thereafter, Attorney General Bondi briefed President Trump that his name appeared in the Epstein files.[18] On July 7, 2025, DOJ and the FBI issued a memo concluding review of the Epstein files for additional disclosures. The memo stated that after "systematic review" of the Epstein files there was "no incriminating 'client list'" or "evidence that could predicate an investigation against uncharged third parties."[19] The memo concluded that "no further disclosure" of information regarding Epstein "would be appropriate or warranted."[20]

On July 17, 2025, *The Wall Street Journal* reported that President Trump had sent Epstein a "bawdy" letter in 2003 for his 50th birthday that included a sketch of a naked woman and a cryptic reference to secrets they shared.[21] *The Wall Street Journal* article contained a quote that Mr. Trump gave to *New York Magazine* for a 2002 profile of Epstein:

> I've known Jeff for fifteen years. Terrific guy. He's a lot of fun to be with. It is even said that he likes beautiful women as much as I do, and many of them are on the younger side.[22]

---

[15] *See* McGrath Decl. Exs. 1, 2 (citing Adam Goldman et al., *How a Frantic Scouring of the Epstein Files Consumed the Justice Dept.*, N.Y. Times (July 24, 2025), https://perma.cc/RLL2-2BVP).

[16] *See* McGrath Decl. Ex. 3 (citing Jason Leopold, *FBI Redacted Trump's Name in Epstein Files for Privacy Reasons*, Bloomberg (Aug. 1, 2025), https://perma.cc/Q2WV-EAXV).

[17] *See* McGrath Decl. Exs. 1, 2 (citing Goldman, *supra* note 15).

[18] *See* McGrath Decl. Exs. 1, 2 (citing s*ee, e.g.*, Sadie Gurman et al., *Justice Department Told Trump in May That His Name Is Among Many in the Epstein Files*, Wall St. J. (July 23, 2025), https://perma.cc/8VE5-QKWD).

[19] FBI Memo, July 2025, U.S. Dep't of Just., https://perma.cc/DRE5-PXTZ (last visited Aug. 1, 2025); *see also* McGrath Decl. Exs. 1, 2.

[20] *Id.*

[21] *See* McGrath Decl. Exs. 1, 2 (citing Khadeeja Safdar et al., *Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump*, Wall St. J. (July 17, 2025), https://perma.cc/4P46-KD4W).

[22] *Id.*

President Trump is suing *The Wall Street Journal* for libel over this reporting.[23] On July 23, 2025, *The Wall Street Journal* reported that Attorney General Bondi had informed President Trump in May that his name was in the Epstein files.[24]

On July 24 and 25, 2025, despite DOJ and the FBI publicly concluding review of the Epstein files via the July 7 memo, Deputy Attorney General Todd Blanche met with Epstein's currently incarcerated co-conspirator Ghislaine Maxwell at the U.S. Attorney's Office in Tallahassee, Florida.[25] Deputy Attorney General Blanche served as President Trump's personal defense lawyer in multiple criminal cases.[26] Media outlets report that DOJ granted Maxwell limited immunity to talk "freely" with Deputy Attorney General Blanche during the two days of interviews.[27] On August 1, 2025, the Trump Administration transferred Maxwell to a lower security prison in Texas.[28] President Trump has repeatedly refused to rule out granting clemency to Maxwell.[29]

---

[23] *See* McGrath Decl. Ex. 3 (citing Nandita Bose et al., *Trump sues Wall Street Journal over Epstein report, seeks $10 billion*, Reuters (July 19, 2025), https://perma.cc/7E2M-2RTF).

[24] *See* McGrath Decl. Exs. 1, 2 (citing Gurman, *supra* note 18).

[25] *See* Todd Blanche (@DAGToddBlanche), X (July 24, 2025, 7:03 PM), https://perma.cc/9GPG-BWE8; *see also* McGrath Decl. Ex. 3 (citing Andrew Skerritt et al., *Epstein associate Ghislaine Maxwell to meet with deputy attorney general again today*, Wash. Post (July 25, 2025), https://perma.cc/U23B-NSVD).

[26] *See, e.g.*, *United States v. Trump*, No. 1:23-cr-00257 (D.D.C. Aug. 1, 2023); *People v. Trump*, No. 71543/23 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 30, 2023); *see also* McGrath Decl. Ex. 3 (citing Perry Stein et al., *The Trump Trial: Inside counsel*, Wash. Post (Nov. 17, 2024), https://perma.cc/7BNP-GTZC).

[27] *See* McGrath Decl. Exs. 1, 2 (citing *see, e.g.*, Aaron Katersky et al., *Ghislaine Maxwell Received Limited Immunity During Meetings with Deputy Attorney General: Sources*, ABC News (July 25, 2025), https://perma.cc/4Y9B-WQ8S).

[28] *See* McGrath Decl. Ex. 3 (citing Solcyré Burga, *Sex Trafficker Ghislaine Maxwell Moved to Minimum Security Prison a Week After Meeting with Trump DOJ*, TIME (Aug. 1, 2025), https://perma.cc/X6MJ-2F2J?type=image).

[29] *See* McGrath Decl. Exs. 1, 2 (citing *see, e.g.*, Brian Bennett, *Trump: Ghislane Maxwell Pardon 'Inappropriate' to Talk About 'Right Now,'* TIME (July 28, 2025), https://perma.cc/F8CN-GTEF?type=image).

## II. Media Coverage of the Trump Administration's Reversal on Releasing the "Epstein Files" Raises Persistent Questions about Government Integrity.

The reporting about the Trump Administration's handling of the Epstein matter raises

numerous questions about actions, statements, and potential conflicts of interest of Trump

Administration officials involved in the matter, including:

1) whether Attorney General Bondi's statements about the so-called Epstein list were accurate;[30]

2) whether Administration officials' decision to reverse course on disclosing significant information from the Epstein matter stems from concerns that President Trump is implicated in the investigative materials;[31]

3) whether the Administration and President are considering immunity, leniency, or clemency for Epstein's co-conspirator Maxwell out of a desire to obtain statements or testimony that would serve the personal or political interests of President Trump

---

[30] *See* McGrath Decl. Exs. 1, 2 (citing *see, e.g.*, David Morgan, *Epstein furor undermines public trust, Republican election hopes, two US lawmakers say*, Reuters (July 27, 2025), https://perma.cc/7H7D-T95C ("Attorney General Pam Bondi triggered 'a crisis of trust' by saying there was no list of Epstein clients after previously implying that one existed"); Elizabeth Elkind, *'Not Going Away': Inside the Epstein Drama That's Thrown House GOP Into Chaos*; Fox News (July 22, 2025), https://perma.cc/KX6C-G39A ("When you say the list is on your desk, and there's no list – you can't take that one back."); Hady Mawajdeh et al., *Why doesn't Donald Trump want to release the Epstein Files?*, Vox (July 17, 2025), https://perma.cc/FQ29-HR5H ("Pam Bondi has handled this whole situation in an . . . often dishonest manner."); Bart Jansen et al., "*Bondi pledged 'transparency' on Epstein files, but grapples with how much*," USA Today (July 27, 2025), https://perma.cc/6LGV-RYNZ ("The Trump administration denials raised suspicions there was something to hide."); Eric Tucker et al., *Epstein 'client list' doesn't exist, Justice Department says, walking back theory Bondi had promoted*, Associated Press (July 7, 2025), https://perma.cc/EE5T-RENV).

[31] *See* McGrath Decl. Exs. 1, 2 (citing Aaron Blake, "*Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them*," CNN (July 24, 2025), https://perma.cc/7BFF-6KV5; Mawajdeh, *supra* note 30 ("That's one of the theories out there, that perhaps there's something in there that's bad for Trump."); Philip Rotner, *Why the Huge Conflicts of Interest Among Trump's Epstein Team Matter*, The Bulwark (July 25, 2025), https://perma.cc/K9SA-TU7A; Chris Cameron, *Trump Really Wants to Stop Talking About Epstein: A Timeline*, N.Y. Times (July 23, 2025), https://perma.cc/U4GB-NJEC; *see also* McGrath Decl. Ex. 3 (Maggie Haberman et al., *Attorney General Told Trump His Name Appeared in Epstein Files*, N.Y. Times (July 23, 2025), https://perma.cc/T4BE-HQXG (reporting the July 7 joint DOJ-FBI "memo fueled further suspicion that something was being hidden")).

and cabin the fallout arising from reports that he is mentioned in the Epstein files
and is declining to release them;[32]

4) whether the fact that the Deputy Attorney General has represented President Trump
in his personal capacity raises a conflict of interest for his handling of the Epstein
matter, including his personal interview of Epstein co-conspirator Maxwell.[33]

Media outlets further report that "[t]he controversy over transparency and accountability
in the Epstein investigation remains a focal point for the public, with polls indicating most
Americans—across party lines—believe the government is concealing evidence related to the
case."[34] A recent national poll shows that 63 percent of voters disapprove of the Trump
Administration's handling of the Epstein files.[35]

## III. DFF Submits FOIA Requests Regarding the Trump Administration's Handling of the Epstein Matter and Requests Expedited Processing.

Because the questions of government integrity surrounding the Trump Administration's

---

[32] *See* McGrath Decl. Exs. 1, 2 (citing *DOJ faces credibility questions as it investigates Jeffrey Epstein*, NPR (July 25, 2025), https://perma.cc/M3WE-C7D8 ("And remember, the president can let [Maxwell] out of prison tomorrow if he's happy with her responses."); Sarah Ewall-Wice, *Ghislaine Handed DOJ 100 Names in Shameless Pardon Quid Pro Quo*, Daily Beast (July 26, 2025), https://perma.cc/UF5C-ZR8X; Glenn Thrush et al., "*After Ghislaine Maxwell Interview, Concerns Mount Over Possibility of Pardon*," N.Y. Times (July 25, 2025), https://perma.cc/P4Y2-X2HL ("New interviews" with Maxwell "appear to serve a function beyond the purposes of traditional law enforcement"); Jansen, *supra* note 30 (The Administration is "tacitly floating a pardon for Maxwell in return for information that politically benefits President Trump")).

[33] *See* McGrath Decl. Exs. 1, 2 (citing NPR, *supra* note 32 ("Blanche's direct involvement raises a key question. His boss, Attorney General Pam Bondi, herself a former Trump lawyer, reportedly told the president in May that his name appeared in the Epstein files, in a breach of the attorney general's independence."); Rotner, *supra* note 31 ("The very idea that Trump's former personal lawyers would play a role, much less a potentially decisive role, in determining whether he was complicit in any of Epstein's misdeeds is an insult to our criminal justice system."); Ewall-Wice, *supra* note 32 ("Blanche has also been criticized for meeting with Maxwell alone, as he previously served as Trump's personal defense attorney.").

[34] McGrath Decl. Exs. 1, 2 (citing Anna Commander, *Republican Targeted by Trump Says Epstein Issue 'Not Going to Go Away*, Newsweek (July 23, 2025), https://perma.cc/8YHB-FUNE).

[35] McGrath Decl. Exs. 1, 2 (citing *63% of Voters Disapprove of The Trump Administration's Handling of the Jeffrey Epstein Files*, Quinnipiac Univ. Nat'l Poll (July 16, 2025), https://perma.cc/K5BM-JPRR).

handling of the Epstein matter are an issue of national concern that is affecting public trust, DFF submitted several FOIA requests to DOJ and the FBI to shed light on the government's actions. *See* McGrath Decl. Exs. 1, 2. These requests seek, in broad terms, records reflecting: (1) the recent review of the Epstein matter case files; (2) the Attorney General's public statements about the contents of the Epstein files in her possession; and (3) communications among high-ranking officials concerning the review of the Epstein matter case files and decisions whether to disclose additional information from them. *See id.*

On July 28, 2025, DFF submitted requests for expedited processing of these July 25 and July 28, 2025 FOIA requests, along with copies of its FOIA requests, directly to DOJ and the FBI. *See* McGrath Decl. Exs. 1, 2.[36] DFF explained that expedited processing is justified: (1) under 28 C.F.R. § 16.5(e)(1)(iv), because DFF's FOIA requests concern a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence"; and (2) under 5 U.S.C. § 552(a)(6)(E)(v)(II), because there is an "urgency to inform the public concerning actual or alleged Federal Government activity." DFF seeks summary judgment only on the basis of the former.

To demonstrate DFF's entitlement to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv), DFF included citations to more than forty articles concerning the Trump Administration's handling of the Epstein matter in its requests for expedited processing. *See* McGrath Decl. Exs. 1, 2. The requests for expedited processing also highlighted and explained that these articles expressly discuss how the Trump Administration's actions on the matter are giving rise to questions about government integrity that affect public confidence. *See id.*

---

[36] These requests for expedited processing were sent, respectively, to the (1) Mail Referral Unit ("MRU"); (2) Office of Information Policy ("OIP"); (3) Executive Office for U.S. Attorneys ("EOUSA"); (4) the Criminal Division ("CRM"); and (5) the FBI. *See* McGrath Decl. ¶¶ 5-6.

On August 7, 2025, OIP, a component of DOJ, denied DFF's requests for expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II), but informed DFF that its requests for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) are "still pending." Having received no further responses to its requests for expedited processing, that same day, DFF submitted a follow-up letter directly to the FBI and other DOJ components, *supra* note 36, reiterating its request for expedited processing. McGrath Decl. Ex. 3. DFF included in this follow-up letter citations to over twenty-five additional articles—many of which were published after DFF submitted its July 28th expedition requests—regarding the Trump Administration's handling of the Epstein matter, demonstrating that DFF's FOIA requests continue to concern a matter attracting widespread and exceptional media interest. *Id.* Here too, DFF highlighted that these additional articles expressly discuss how the Trump Administration's handling of the Epstein matter is giving rise to questions about government integrity that affect public confidence. *Id.*

To date, Defendants have not responded to DFF's requests for expedited processing. *See* McGrath Decl. ¶ 7. DFF, accordingly, filed the instant motion and here moves for summary judgment on the matter of its entitlement to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv).

## LEGAL STANDARD

FOIA provides for expedited processing of requests for agency records in "cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(II). Pursuant to this authority, DOJ regulations provide for expedited processing if a request involves a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). The FBI is a component of DOJ, *see* 28 C.F.R. pt. 16, app. I, and its processing of FOIA requests are governed by this and other DOJ regulations, *see id.* § 16.1. Agencies are required to respond to requests for expedited processing

within ten calendar days; their failure to timely respond is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(ii), (iii).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

## ARGUMENT

DFF is entitled as a matter of law to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv) of its FOIA requests for records concerning the Trump Administration's handling of the Epstein matter. There is no genuine dispute as to any material fact that the records DFF seeks (1) involve "a matter of widespread and exceptional media interest" and that (2) the matter drawing widespread and exceptional media interest—the Trump Administration's handling of the Epstein matter—raises questions about the government's integrity that affect public confidence. As DFF's requests show, there have been dozens upon dozens of recent media reports concerning the Trump Administration's handling of the Epstein matter, exceeding the coverage necessary to establish exceptional media interest in other cases in this district. And DFF's expedition requests highlight several questions about government integrity that are raised by media outlets' coverage of this matter and the Trump Administration's actions—including whether Administration officials are, in several respects, serving the personal and political interests of the President rather than the public interest. DFF's expedition requests meet the standard for expedited processing set by DOJ's

regulation. *See Brennan Ctr. for Just. at N.Y.U. Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 97 (D.D.C. 2020).

## I.    DFF's Epstein Matter Requests Involve "A Matter of Widespread and Exceptional Media Interest."

Few topics have received more extraordinary levels of media interest than the Trump Administration's handling of the Epstein matter. DFF's requests for expedition amply demonstrated that the subject matter of DFF's requests is one of "widespread and exceptional media interest" that meets the requirement for expedited processing under DOJ's regulations. 28 C.F.R. § 16.5(e)(1)(iv).

Courts within this circuit have held that "more than fifty recent articles" is "considerably more than . . . suffic[ient]" to establish "widespread and exceptional" media interest. *See Brennan Ctr. for Just. at N.Y.U. Sch. of L.*, 498 F. Supp. at 97. Indeed, some courts in this jurisdiction have found media interest to be "widespread and exceptional" on the basis of "only a handful of articles." *See ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004); *see also Am. Oversight v. U.S. Dep't of Just.*, 292 F. Supp. 3d 501, 504, 506 (D.D.C. 2018) (noting that DOJ found the exceptional media interest prong satisfied by a request citing five articles, even as the agency found expedition was not warranted on the second prong). DFF's requests easily meet and exceed the standard set by these precedents.

DFF's July 28th requests for expedited processing included more than forty recent articles on the Trump Administration's handling of the Epstein matter. In following up with Defendants on its requests for expedition on August 7, DFF cited more than twenty-five additional articles— many of which were published after DFF's July 28th requests. There can be no genuine dispute that DFF's FOIA requests concern "a matter of widespread and exceptional media interest" and

thus meet the requirement of that prong of Defendants' expedition criteria. 28 C.F.R. § 16.5(e)(1)(iv).

## II. The Extensive Media Coverage of the Trump Administration's Handling of the Epstein Matter Contains "Possible Questions About the Government's Integrity That Affect Public Confidence."

The extensive media coverage of the Trump Administration's handling of the Epstein matter has raised numerous questions about the integrity of government actions that affect public confidence—from the veracity of the Attorney General in publicly discussing the case to the possible conflicts of interest inherent in the involvement of an official who has served as the President's personal lawyer. DFF's requests for expedited processing explained the questions about government integrity raised in news reports and, thus, meets the DOJ regulation's expedition requirement that the subject matter of the request involve "possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

DOJ has previously interpreted subsection (iv) to require that "the same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the government's integrity that affect public confidence," suggesting that the news articles concerning the topic of a FOIA request must *themselves* raise questions of government integrity. *See Am. Oversight*, 292 F. Supp. 3d at 506. Another court in this district has, however, applied a somewhat less stringent standard, whereby the media reports about the subject matter of a FOIA request need not themselves raise questions about governmental integrity. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 361 (D.D.C. 2020) (finding DOJ's denial of expedited processing request was unreasonable where "*the request* raised 'possible questions' about government integrity" with reference to the requester's articulated concerns, not those contained in media reports (emphasis added)). Regardless, DFF meets either

13

standard as its requests for expedited processing highlight that public reports have raised numerous questions about government integrity in connection with their coverage of the Administration's handling of the Epstein matter.

*First*, DFF established that the widespread media reporting raises concerns about the accuracy of Attorney General Bondi's February 21 statement that the Epstein client list was "sitting on [her] desk right now to review."[37] *See* McGrath Decl. Exs. 1, 2, 3. When DOJ and the FBI later concluded there was "no incriminating 'client list,'"[38] major media outlets reported that the Attorney General's prior, contrary statements had "undermined public trust." *See, e.g.*, David Morgan, *Epstein furor undermines public trust, Republican election hopes, two US lawmakers say*, Reuters (July 27, 2025) ("Attorney General Pam Bondi triggered 'a crisis of trust' by saying there was no list of Epstein clients after previously implying that one existed");[39] Elizabeth Elkind, *'Not Going Away': Inside the Epstein Drama That's Thrown House GOP Into Chaos*; Fox  News (July 22, 2025) ("When you say the list is on your desk, and there's no list – you can't take that one back"). Indeed, after DOJ and the FBI had to "walk[] back [the] theory Bondi had promoted," *see* Eric Tucker et al., *Epstein 'Client List' Doesn't Exist, Justice Department Says, Walking Back Theory Bondi Had Promoted*, Associated Press (July 7, 2025), media reports captured public impressions that Attorney General "Bondi has handled this whole situation in an . . . often dishonest manner," Hady Mawajdeh et al., *Why doesn't Donald Trump want to release the Epstein Files?*, Vox (July 17, 2025), and "raised suspicions there was something to hide," Bart Jansen et al., "*Bondi pledged 'transparency' on Epstein files, but grapples with how much*," USA Today (July 27, 2025).

---

[37] Chi-Sing, *supra* note 11.
[38] FBI Memo, *supra* note 19.
[39] *See supra* note 30 for weblinks to all articles cited in this paragraph.

*Second*, DFF showed that the widespread media reporting on the Trump Administration's handling of the Epstein matter raises questions as to whether senior officials' decisions to reverse course on disclosing significant information stems from concerns that President Trump is personally implicated in the investigative materials. *See* McGrath Decl. Exs. 1, 2, 3. Reporting by major media outlets suggest that the "Trump team changed its tune on [releasing the] Epstein files after Trump was told he was in them," *see* Aaron Blake, "*Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them*," CNN (July 24, 2025),[40] and that "one of the theories out there [is] that perhaps there's something in there that's bad for Trump," *see* Mawajdeh et al., *Why doesn't Donald Trump want to release the Epstein Files?, supra* p. 14 and note 31; *see also* Maggie Haberman et al., *Attorney General Told Trump His Name Appeared in Epstein Files*, N.Y. Times (July 23, 2025) (reporting the July 7th joint DOJ-FBI "memo fueled further suspicion that something was being hidden"); *see also* Chris Cameron, *Trump Really Wants to Stop Talking About Epstein: A Timeline*, N.Y. Times (July 23, 2025). This question about whether a significant policy was reversed to serve the personal and political interests of an individual, rather than the public, is a quintessential question about government integrity that impacts public confidence.

*Third*, DFF established that the widespread media reporting on the Trump Administration's handling of the Epstein matter raises questions as to whether the Administration and President are considering immunity, leniency, or clemency for Epstein's co-conspirator Maxwell out of a desire to obtain statements or testimony that would serve the personal or political interests of President Trump and cabin the fallout arising from reports that he is mentioned in the Epstein files and is declining to release them. *See* McGrath Decl. Exs. 1, 2, 3. Major media outlets report that

---

[40] Unless otherwise specified, *see supra* note 31 for weblinks to articles cited in this paragraph.

Blanche's "new interviews" with Maxwell on July 24 and 25, 2025,[41] "appear to serve a function beyond the purposes of traditional law enforcement." Glenn Thrush et al., "*After Ghislaine Maxwell Interview, Concerns Mount Over Possibility of Pardon*," N.Y. Times (July 25, 2025).[42] Indeed, reporting captures public impressions that the Trump Administration is meeting with Maxwell and "tacitly floating a pardon for [her] in return for information that politically benefits President Trump." Jansen, *supra* p. 14 and note 32; *see also* Sarah Ewall-Wice, *Ghislaine Handed DOJ 100 Names in Shameless Pardon Quid Pro Quo*, Daily Beast (July 26, 2025). Media outlets, accordingly, report the government has engendered "credibility questions" by interviewing Maxwell. *See, e.g.*, *DOJ faces credibility questions as it investigates Jeffrey Epstein*, NPR (July 25, 2025), ("And remember, the president can let [Maxwell] out of prison tomorrow if he's happy with her responses."). Similarly, a question about whether an individual convicted of serious crimes involving minors will receive leniency or clemency from government officials in order to serve an official's personal or political interests is a question involving government integrity.

   *Fourth*, and finally, DFF showed that the widespread media reporting on the Trump Administration's handling of the Epstein matter raises questions as to whether the Deputy Attorney General's representation of President Trump in his personal capacity raises a conflict of interest for his handling of the Epstein matter, including his personal interview of Epstein co-conspirator Maxwell. *See* McGrath Decl. Exs. 1, 2, 3. Major media outlets report that "Blanche has . . . been criticized for meeting with Maxwell alone, as he previously served as Trump's personal defense attorney." Ewall-Wice, *Ghislaine Handed DOJ 100 Names in Shameless Pardon Quid Pro Quo*, *supra* p. 16 and note 33. Moreover, reporting captures public impressions that "Blanche's direct

---

[41] *Supra* note 25.

[42] Unless otherwise specified, *see supra* note 32 for weblinks to articles cited in this paragraph.

involvement" and the fact that "Attorney General Pam Bondi, herself a former Trump lawyer, reportedly told the president in May that his name appeared in the Epstein files" constitute "a breach of the [A]ttorney [G]eneral's independence." *DOJ faces credibility questions as it investigates Jeffrey Epstein*, *supra* p. 16 and note 33; *see also* Philip Rotner, *Why the Huge Conflicts of Interest Among Trump's Epstein Team Matter*, The Bulwark (July 25, 2025), *supra* note 33 ("The very idea that Trump's former personal lawyers would play a role, much less a potentially decisive role, in determining whether he was complicit in any of Epstein's misdeeds is an insult to our criminal justice system.").

In short, media reports make plain that to report on the Trump Administration's handling of the Epstein matter *is* to report on questions about the government's integrity that affect public confidence. *See, e.g.*, Rotner, *Why the Huge Conflicts of Interest Among Trump's Epstein Team Matter*:

> Trump has had one of his former personal lawyers, Attorney General Pam Bondi, send another of his former personal lawyers, Deputy Attorney General Todd Blanche, to gather evidence from a witness who is seeking his presidential pardon, Ghislaine Maxwell, in a criminal investigation in which Trump himself is a witness and possibly a subject, into whether any of the former friends and associates of sexual predator Jeffrey Epstein, of whom Trump was one, might have been criminally complicit in Epstein's abuse and trafficking of young girls.

*Supra*, p.17 and note 31; *see also* Morgan, *Epstein furor undermines public trust, supra* p. 14 and note 30; *DOJ faces credibility questions as it investigates Jeffrey Epstein*, *supra* p. 16 and note 32. It is, accordingly, unsurprising that media outlets further report that "[t]he controversy over transparency and accountability in the Epstein investigation remains a focal point for the public, with polls indicating most Americans—across party lines—believe the government is concealing evidence related to the case." Anna Commander, *Republican Targeted by Trump Says Epstein*

17

*Issue 'Not Going to Go Away*, Newsweek (July 23, 2025).[43] And DFF's expedition requests pointed out that this subject matter is of significant concern to the public, citing a recent national poll figure that 63 percent of voters disapprove of the Trump Administration's handling of the Epstein files. *See 63% of Voters Disapprove of The Trump Administration's Handling of the Jeffrey Epstein Files*, Quinnipiac Univ. Nat'l Poll (July 16, 2025).[44]

* * * * *

In sum, there is no genuine dispute as to any material fact that (1) DFF's FOIA requests on the Trump Administration's handling of the Epstein matter involve "a matter of widespread and exceptional media interest" and that (2) the matter drawing widespread and exceptional media interest—the Trump Administration's handling of the Epstein matter—is the same matter in which there exists "possible questions about the government's integrity that affect public confidence." DFF is, thus, entitled to summary judgment on its request for expedited processing of these requests under 28 C.F.R. § 16.5(e)(1)(iv) as a matter of law.

**CONCLUSION**

For the foregoing reasons, Plaintiff DFF respectfully requests that the Court grant DFF's motion for summary judgment and order Defendants DOJ and the FBI to expedite processing of DFF's FOIA requests in this matter. A proposed order is attached.

---

[43] *See supra* note 34 for a weblink to the article.
[44] *See supra* note 35 for a weblink to the article.

Dated: August 11, 2025

Respectfully submitted,

/s/ *Daniel A. McGrath*

Daniel A. McGrath
(D.C. Bar No. 1531723)
Amy C. Vickery*
(*pro hac vice forthcoming)
Robin F. Thurston
(D.C. Bar No. 7268942)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
avickery@democracyforward.org
rthurston@democracyforward.org