**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DEPARTMENT OF JUSTICE, et al., | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 25-cv-2597 (TSC)

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.    Statutory and Regulatory Framework ......................................................................... 2

    A.    The FOIA Processing Framework ................................................................ 2

    B.    The DOJ's Expedited Processing Regulatory Framework ................................ 4

II.    Procedural Background................................................................................................ 5

    A.    DFF's Requests for Records ......................................................................... 5

    B.    DFF's Expedition Requests ....................................................................... 10

    C.    DFF's Suit .................................................................................................. 11

LEGAL STANDARD ....................................................................................................... 12

ARGUMENT .................................................................................................................... 12

PLAINTIFF HAS FAILED TO ESTABLISH A RIGHT TO EXPEDITED PROCESSING ................................................................................................................. 12

I.    Review for Entitlement to Expedited Processing is Rigorous and Narrow ................. 12

    A.    Plaintiff Must Demonstrate Expedited Processing Based Only on the Record it Provided to the Agency .................................................................... 12

    B.    28 C.F.R. § 16.5(e)(1)(iv) Requires a Direct Relationship Between Media Coverage and a Plaintiff's Request .................................................................. 14

II.    DFF Has Failed to Satisfy 28 C.F.R. § 16.5(e)(1)(iv) as to All Requests ..................... 14

III.    DFF Has Not Met its Burden to Show Expedited Processing is Warranted for its Specific Requests ................................................................................................... 16

    A.    The Court Should Consider Whether Each Category of Records Sought by DFF Satisfies the Expedition Standard ............................................................ 16

    B.    DFF Has Failed to Meet its Burden for the Twelve Categories of Records it Seeks ........................................................................................................... 17

CONCLUSION ................................................................................................................. 21

## **TABLE OF AUTHORITIES**

### Cases

*Al-Fayed v. CIA,*
  254 F.3d 300 (D.C. Cir. 2001) ........................................................................ *passim*

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.,*
  498 F. Supp. 3d 87 (D.D.C. 2020) .................................................................. 16

*Citizens for Resp. & Ethics in Wash. v. FEC,* ("*CREW*")
  711 F.3d 180 (D.C. Cir. 2013) ..................................................................... 2, 3

*Heritage Found. v. Dep't of State,*
  No. 24-cv-2862 (TJK), 2024 WL 4607501 (D.D.C. Oct. 29, 2024) ...................... 16

*Elec. Priv. Info. Ctr. v. DOD,* ("*EPIC I*")
  ("*EPIC I*"), 355 F. Supp. 2d 98 (D.D.C. 2004) ........................................ 3, 16, 17

*Elec. Priv. Info. Ctr. v. DOJ,* ("*EPIC III*")
  15 F. Supp. 3d 32 (D.D.C. 2014) ..................................................................... 4

*Jud. Watch, Inc. v. DHS,*
  895 F.3d 770 (D.C. Cir. 2018) ....................................................................... 3

*Leadership Conf. on Civ. Rts. v. Gonzales,*
  404 F. Supp. 2d 246 (D.D.C. 2005) ............................................................... 12

*Oversight v. DOJ,*
  292 F. Supp. 3d 501 (D.D.C. 2018) ............................................................ *passim*

*Rolling Stone LLC v. DOJ,*
  739 F. Supp. 3d 237 (S.D.N.Y. 2024) ............................................................ 14

*United States v. Mead Corp.,*
  533 U.S. 218 (2001) .................................................................................... 13

### Statutes

5 U.S.C. § 552 ....................................................................................... 2, 3, 4, 13

Electronic Freedom of Information Act Amendments of 1996,
  Pub. L. No. 104-231 § 8, 110 Stat. 3048 (1996) ................................................ 3

### Rules

Fed. R. Civ. P. 56(a) ................................................................................................. 12

## Regulations

28 C.F.R. § 16.5 ................................................................................................ *passim*

## Other Authorities

Bart Jansen and John Kennedy, "*Bondi pledged 'transparency' on Epstein files, but grapples with how much,*" USA Today (July 27, 2025), https://www.usatoday.com/story/news/politics/2025/07/27/pam-bondi-jeffrey-epstein-release-criminal-file/85338256007/ ................................................................................................. 20

Eric Tucker and Alanna Durkin Richer, "*Mystery surrounds the Jeffrey Epstein files after Bondi claims 'tens of thousands' of videos,*" Associated Press (July 1, 2025), https://apnews.com/article/justice-department-jeffrey-epstein-pam-bondi-trump-fa39193d5b5ff91970428bf077a5ce44 ................................................................................................. 20

Greta Cross, "*AG Pam Bondi plans to release flight logs, names related to Jeffrey Epstein on Thursday,*" USA Today (February 27, 2025), https://www.usatoday.com/story/news/politics/2025/02/27/jeffrey-epstein-flight-logs-names-pam-bondi/80690426007/ ................................................................................................. 19

Haley Chi-Sing, "*Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files,*" FOX News (February 21, 2025), https://www.foxnews.com/politics/bondi-says-epstein-client-list-sitting-my-desk-right-now-reviewing-jfk-mlk-files; ................................................................................................. 19

## INTRODUCTION

In the ordinary case, agencies process records requested under the Freedom of Information Act ("FOIA") on a first-in, first-out basis.  In extraordinary situations, however, an agency will grant "expedited processing" and process records "as soon as practicable."  Expedited processing is the exception, however.  After all, if every request were granted expedited processing, then not one would receive its benefit.  As a result, the overwhelming majority of requests must remain in the ordinary processing queue and await fulfillment of earlier filed requests.

Plaintiff Democracy Forward Foundation ("DFF") pursues a blanket grant of expedition for twelve categories of records, across seven different requests.  The scope of these requests is broad.  One seeks a search for records covering three and a half decades.  Another covers "communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages or messages on messaging platforms, including Slack and Microsoft Teams, and summaries of oral communications)" from at least fourteen officials at the Department of Justice ("DOJ") and the Federal Bureau of Investigations ("FBI").

The subject of DFF's requests is in various ways tied to Jeffrey Epstein, a hedge-fund manager who was indicted over six years ago and died by suicide in August 2019.  Compl. ¶¶ 6-8, ECF No. 1.  Six years later, DFF seeks to obtain records both old and new, tied to criminal files and more recent Government activity.  To jump the line and secure expedited processing, DFF must satisfy the Department's governing regulations, including by showing that each category of requested records constitutes a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."  *See* 28 C.F.R. § 16.5(e)(1)(iv).  Failing that, DFF cannot secure extraordinary treatment.  And, by statute,

DFF can only rely on the record it placed before the agency when it requested expedited processing.  DFF has failed to satisfy the expedition requirements.

The evidence DFF cites in its letters is not sufficiently tailored to the FOIA requests.  It is not enough to list a series of media reports on the general topic of Jeffrey Epstein.  Because of the breadth of DFF's twelve-part request, it did not attempt to establish a precise nexus, nor could it.  And DFF has not established that the requested records suggest "questions about the government's integrity."  To the contrary, the Department has produced relevant records to Congress and repeatedly stressed its commitment to transparency, as the media reports in the record before the agency establish.  All told, DFF has not met its burden to demonstrate its omnibus requests for a massive trove of records merit expedition.  Having failed to do so, DFF's motion should be denied.

**BACKGROUND**

**I.      Statutory and Regulatory Framework**

**A.      The FOIA Processing Framework**

FOIA directs that federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available."  5 U.S.C. § 552(a)(3)(A).  By regulation and statute, agencies ordinarily process FOIA requests on a first-in, first-out basis with regularized rules for the processing and production of non-exempt records.

FOIA provides that, in the usual course, an agency shall "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request."  *Id.* § 552(a)(6)(A)(i).  In cases of "unusual circumstances," the agency may do so within 30 working days.  *Id.* § 552(a)(6)(B)(i).  Regardless, "[i]f the agency has made and communicated its 'determination' in a timely manner, the requester is required to

administratively appeal that 'determination' before bringing suit." *Citizens for Resp. & Ethics in Wash. v. FEC* ("*CREW*"), 711 F.3d 180, 182 (D.C. Cir. 2013).  After that administrative appeal is timely resolved, an aggrieved requestor may then seek judicial review.  *Jud. Watch, Inc. v. DHS*, 895 F.3d 770, 775 (D.C. Cir. 2018).  If the agency does not make a determination within the relevant time period, administrative remedies are deemed exhausted and the requester may file suit.  *CREW*, 711 F.3d at 185.  But, "so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'"  *Id.* (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

That is the standard process.  In 1996, however, Congress amended FOIA to provide for "expedited processing" of certain categories of requests.  *See* Electronic Freedom of Information Act Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8, 110 Stat. 3048, 3051–52 (1996) (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles requesters to move ahead of the ordinary processing queue, behind earlier-filed expedited requests.  *See Elec. Priv. Info. Ctr. v. DOD* ("*EPIC I*"), 355 F. Supp. 2d 98, 104 (D.D.C. 2004).

When creating this expedition procedure, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency."  *Id.* § 552(a)(6)(E)(i)(II).  The first category, compelling need, means:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

3

*Id.* § 552(a)(6)(E)(v); *see Elec. Priv. Info. Ctr. v. DOJ* ("*EPIC III*"), 15 F. Supp. 3d 32, 43 n.6 (D.D.C. 2014). The present summary judgment motion deals with the second category, other cases determined by the agency. *See Oversight v. DOJ*, 292 F. Supp. 3d 501, 505 (D.D.C. 2018).

If a request for expedition is granted, "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedit[ion]." 5 U.S.C. § 552(a)(6)(E)(iii). If denied, a requestor may seek relief in federal court. For expedited processing specifically, requestors may challenge a denial or failure to grant expedition after 10 days and "judicial review shall be based on the record before the agency at the time of the determination." *Id.*

### B.    The DOJ's Expedited Processing Regulatory Framework

Pursuant to EFOIA, the DOJ has promulgated regulations to govern its consideration of expedition requests. 28 C.F.R. § 16.5(e). The Department permits requests for expedited processing to be made at any time. *Id.* § 16.5(e)(2). The burden is on the requester to "submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing." *Id.* § 16.5(e)(3). Any component of the Department considering a request is given 10 calendar days from "the receipt of a request for expedited processing" to communicate its decision. *Id.* § 16.5(e)(4). As EFOIA requires, the grant of expedited processing means the underlying request "shall be given priority, placed in the processing track for expedited requests, and shall be processed as soon as practicable." *Id.*

The DOJ has specified two circumstances in which expedited processing is permissible outside the compelling need framework. *See id.* § 16.5(e)(1)(iii)–(iv). As relevant here, the Department permits expedited processing for a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." *Id.* § 16.5(e)(1)(iv). "The Department has interpreted subsection (iv) to require that

4

the same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the government's integrity that affect public confidence." *Oversight*, 292 F. Supp. 3d at 505 (citations omitted).  Moreover, the Director of the Office of Public Affairs ("OPA") at the Department processes requests relying on the widespread and exceptional media interest standard.  28 C.F.R. § 16.5(e)(2).

## II.    Procedural Background

### A.    DFF's Requests for Records

DFF attached several rounds of FOIA requests to its motion for summary judgment, covering different topics and time periods.

First, DFF included nearly a dozen requests for records, across six letters dated July 25, 2025, sent to several Department components and/or the Department's Mail Referral Unit ("MRU")—which forwards requests to the component(s) that it determines to be most likely to maintain the records sought[1]:

1.    Attorney General Materials Request: All materials prepared or compiled by DOJ officials for Attorney General Bondi's review regarding the Jeffery Epstein matter from January 20 to the date of the search.  Decl. of Daniel McGrath, Ex. 1 at 17, ECF No. 4-2.

2.    Attorney General Briefing Request: All briefing materials (such as memoranda, talking points, or emails summarizing key information) prepared for Attorney General Bondi for her meetings with President Trump regarding the Jefferey Epstein matter, including her May 2025 meeting at the White House from March

---

[1] These requests have been labeled with categorical titles, such as "Attorney General Materials Request" and reformatted for the ease of this Court's review.

15, 2025 to May 30, 2025.  *Id.* at 18.

3.  DOJ Correspondence Request: All records from January 20 to the date of the search reflecting communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages or messages on messaging platforms, including Slack and Microsoft Teams, and summaries of oral communications) of the following DOJ officials regarding the Jeffery Epstein matter, including records reflecting correspondence between Trump and Epstein: Attorney General Pam Bondi; Deputy Attorney General Todd Blanche; Anyone serving as Associate Attorney General or Acting Associate Attorney General; Chief of Staff Chad Mizelle; Anyone serving as Advisor or Senior Advisor to the Attorney General; Anyone serving as Chief of Staff to the Deputy Attorney General; Anyone serving as Advisor or Senior Advisor to the Deputy Attorney General.  *Id.* at 22-23.

4.  DOJ Email Request: All email communications from January 20 to the day of the search (including email messages, complete email chains, email attachments, calendar invitations) <u>sent</u> by the following DOJ officials—Attorney General Pam Bondi; Deputy Attorney General Todd Blanche; Anyone serving as Associate Attorney General or Acting Associate Attorney General; Chief of Staff Chad Mizelle; Anyone serving as Advisor or Senior Advisor to the Attorney General; Anyone serving as Chief of Staff to the Deputy Attorney General; Anyone serving as Advisor or Senior Advisor to the Deputy Attorney General—containing any of the key terms: "Client List"; "Epstein"; "Flight Logs"; "Ghislaine Maxwell"; "Whistleblower."  *Id.* at 23 (emphasis in the original).

6

5. FBI Correspondence Request: All records from January 20 to the date of the search reflecting communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages or messages on messaging platforms, including Slack and Microsoft Teams, and summaries of oral communications) of the following FBI officials regarding the Jeffery Epstein matter, including records reflecting correspondence between Trump and Epstein: Director Kash Patel; Deputy Director Dan Bongino; Associate Deputy Director J. William Rivers; Anyone serving as Chief of Staff to the Director; Anyone serving as Advisor or Senior Advisor to the Director; Anyone serving as Chief of Staff to the Deputy Director; Anyone serving as Advisor or Senior Advisor to the Deputy Director. *Id.* at 28-29.

6. FBI Email Request: All email communications from January 20 to the day of the search (including email messages, complete email chains, email attachments, calendar invitations) <u>sent</u> by the following FBI officials—Director Kash Patel; Deputy Director Dan Bongino; Associate Deputy Director J. William Rivers; Anyone serving as Chief of Staff to the Director; Anyone serving as Advisor or Senior Advisor to the Director; Anyone serving as Chief of Staff to the Deputy Director; Anyone serving as Advisor or Senior Advisor to the Deputy Director— containing any of the key terms: "Client List"; "Epstein"; "Flight Logs"; "Ghislaine Maxwell"; "Whistleblower." *Id.* at 29 (emphasis in the original).

7. Combined DOJ and FBI Correspondence Request: All records from January 20 to the date of the search reflecting communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation

attachments, text messages or messages on messaging platforms, including Slack and Microsoft Teams, and summaries of oral communications) between or among any of the following DOJ officials—Attorney General Pam Bondi; Deputy Attorney General Todd Blanche; Anyone serving as Associate Attorney General or Acting Associate Attorney General; Chief of Staff Chad Mizelle; Anyone serving as Advisor or Senior Advisor to the Attorney General; Anyone serving as Chief of Staff to the Deputy Attorney General; Anyone serving as Advisor or Senior Advisor to the Deputy Attorney General—and any of the following FBI officials—Director Kash Patel; Deputy Director Dan Bongino; Associate Deputy Director J. William Rivers; Anyone serving as Chief of Staff to the Director; Anyone serving as Advisor or Senior Advisor to the Director—regarding the Jeffery Epstein matter, including records reflecting correspondence between Trump and Epstein. *Id.* at 33-34.

8. White House, DOJ, and FBI Correspondence Request: All records from January 20 to the date of the search reflecting communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages or messages on messaging platforms, including Slack and Microsoft Teams, and summaries of oral communications) between any of the following DOJ or FBI officials—Attorney General Pam Bondi; Deputy Attorney General Todd Blanche; Anyone serving as Associate Attorney General or Acting Associate Attorney General; Chief of Staff Chad Mizelle; Anyone serving as Advisor or Senior Advisor to the Attorney General; Anyone serving as Chief of Staff to the Deputy Attorney General; Anyone serving as Advisor or Senior

8

Advisor to the Deputy Attorney General; Director Kash Patel; Deputy Director Dan Bongino; Associate Deputy Director J. William Rivers; Anyone serving as Chief of Staff to the Director; Anyone serving as Advisor or Senior Advisor to the Director—and White House Press Secretary Karoline Leavitt, including any @who.eop.gov email address associated with her, regarding the Jeffrey Epstein matter, including records reflecting correspondence between Trump and Epstein. *Id.* at 34-35.

9. FBI Directives and Guidance Request: For the FBI, from March 14 to the date of the search, all directives, guidance, and instructions provided from agency political appointees or other leadership to agency personnel designated to the Information Management Division to assist with the Epstein-related records review between March 14, 2025 and March 30, 2025, including "flagging" any reference to President Trump in the records. *Id.* at 39.

10. FBI Staff Personal Information Request: For the FBI, from March 14 to the date of the search, records reflecting all staff assigned to review Epstein-related records, such as a list of agent names; calendar entries of participants, or email including email addresses reflecting those staff. *Id.*

11. FBI Mentions of President Trump Request: For the FBI, from March 14 to the date of the search, all records reflecting all mentions of President Trump within the Epstein-related records review that took place between March 14, 2025 and March 30, 2025. *Id.*

Second, DFF cites an additional FOIA request sent by letter dated July 28, 2025. That request sought records reflecting all correspondence between Donald J. Trump and Jeffrey Epstein

from January 1, 1990 to the date of the search.  Ex. 2 at 45-55 ("Trump-Epstein Correspondence Request") .  DFF specified that the search should cover "case files related to the Jeffrey Epstein and Ghislaine Maxwell criminal matters."  *Id.* at 45.

### B.    DFF's Expedition Requests

DFF's July 25 requests did not include any requests for expedited processing.  In a July 28, 2025, letter DFF requested that those FOIA requests receive expedited processing.  Request for Expedited Processing for Recently Submitted Requests ("First Expedited Processing Letter"), Ex. 1 at 9-16.[2]  In support of expedition, DFF summarized its requests as involving: (1) "the recent review of the Epstein matter case files[,]" (2) "the Attorney General's public statements about the contents of the Epstein matter files that she had in her possession[,]" and (3) "communications among high-ranking officials concerning the Epstein matter following intense media coverage and public interest concerning decisions made about the case and the decision not to release files in the matter."  *Id.* at 9-10.

To justify expedition, DFF cited both the "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence" and "urgency to inform the public concerning actual or alleged Federal Government activity" standards.  *Id.* (citations omitted).  DFF did not provide a request-by-request analysis. *Id.* at 9-16.  DFF instead broadly argued that the topics it summarized satisfy the expedition standard.  *Id.*  And it provided links to various articles it contended satisfied portions of the relevant standard.  For example, to demonstrate the "widespread and exceptional media interest" portion of 28 C.F.R. § 16.5(e)(1)(iv), Plaintiff provided a narrative summary of alleged events with

---

[2] All exhibit page numbering throughout this brief will reflect the CM/ECF page stamps for ease of reference.

footnotes linking to articles covering those events.   First Expedited Processing Letter at 10-12. Similarly, to show "questions about the government's integrity that affect public confidence," DFF proposed several "questions about the government's integrity" alongside links to articles purportedly implicating these questions.  *Id.* at 12-14.[3]

On August 7, Plaintiff sent an additional letter in support of expedited processing.  Ex. 3 at 1 ("Second Expedited Processing Letter"), ECF No. 4-2 at 57-59.  Earlier that day, the Office of Information Policy ("OIP") had denied expedited processing under the "urgency to inform the public" standard for the four requests received by OIP on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.  *Id.*  In response, DFF provided additional links to news articles in support of its request under the "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence" standard.  *Id.*  Unlike its earlier letter, DFF did not provide categorization and argument.  Instead, DFF simply linked to a series of articles to support "widespread and exceptional media interest," continued media coverage, and stated that news reports "continue[] to raise questions about government integrity that affect public trust that DFF identified in its July 28 expedition request."  *Id.* at 57.

**C.    DFF's Suit**

DFF subsequently filed suit on August 8.  Compl.  DFF alleges a single count of "Failure to Grant Expedited Processing."  *Id.* at Claim For Relief, Count I.  It seeks an order for DOJ and FBI to grant expedited processing "by providing Plaintiff with a determination and production of non-exempt portions of the requested records as soon as practicable."  *Id.* at Request For Relief ¶

---

[3] The July 28 Trump-Epstein Correspondence Request contained its own request for expedition which is nearly identical to the First Expedited Processing Letter sent that same day. *Compare* First Expedited Processing Letter *with* Trump-Epstein Correspondence Request.

1.

DFF moved for summary judgment on only the "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence" standard.  Mem. of L. in Supp. of Pl.'s Mot. for Summ. J., at 9, ("Pl.'s MSJ") ECF No. 4-1.  The Court then granted DFF's unopposed motion for expedited consideration by this Court, setting a schedule for Defendants' opposition and Plaintiff's reply.  Pl.'s Unopposed Mot. for Expedited Consideration and Joint Proposed Briefing Schedule, ECF No. 6; Minute Order (Aug. 13, 2025).

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  So summary judgment requires that "the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law."  *Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

## ARGUMENT

### PLAINTIFF HAS FAILED TO ESTABLISH A RIGHT TO EXPEDITED PROCESSING

I.    **Review for Entitlement to Expedited Processing is Rigorous and Narrow**

A.    **Plaintiff Must Demonstrate Expedited Processing Based Only on the Record it Provided to the Agency**

As an initial matter, DFF has the burden to show that expedition for each of its requests is appropriate.  *See Al-Fayed v. CIA*, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001).  And a plaintiff may only meet its burden by relying on the "record before the agency at the time of the determination."

5 U.S.C. § 552(a)(6)(E)(iii). Since DFF filed this suit on August 8, treating the passage of ten days as a constructive denial of expedited processing, the Court may consider only the submissions DFF made to DOJ and FBI prior to that date.

Moreover, depending on the basis of a plaintiff's request, review of the constructive denial will be with or without deference. Failure to grant expedited processing under the compelling need standard, 5 U.S.C. § 552(a)(6)(E)(i)(I), is reviewed de novo. *See Al-Fayed*, 254 F.3d at 307. But expedited processing decisions under an agency's regulations promulgated through the "in other cases determined by the agency" authority, 5 U.S.C. § 552(a)(6)(E)(i)(II), is reviewed deferentially as it involves an agency's own regulations. *See Al-Fayed*, 254 F.3d at 307 n.7. The relevant expedition standard that DFF invokes, 28 C.F.R. § 16.5(e)(1)(iv), was created pursuant to the latter statutory basis. As a result, the Court should review the constructive denial more deferentially than it would one for lack of compelling need. *See Oversight*, 292 F. Supp. 3d at 506 ("[C]ourts grant deference to regulations promulgated pursuant to the second, discretionary prong.").

The reason for deference is simple. The Department chose to add an extra category permitting expedited processing based on an "express delegation of authority." *Al-Fayed*, 254 F.3d at 307 n.7 (citing *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)). The result of that delegation is flexibility. *Oversight*, 292 F. Supp. 3d at 506. For example, consistent interpretations of the regulation by the Department are owed deference. *Id.* at 507. Courts also defer to the reasonableness of any decision by an agency pursuant to an expedition category promulgated under the "other cases" authority. *See Al-Fayed*, 254 F.3d at 307 n.7.

13

And under either de novo or deferential review, expedition decisions call for "a narrow application" of the relevant categories. *See id.* at 310. This is based both on both fairness to other requestors and acknowledgement of agencies' limited capabilities. *Id.*

### B. 28 C.F.R. § 16.5(e)(1)(iv) Requires a Direct Relationship Between Media Coverage and a Plaintiff's Request

By its text, 28 C.F.R. § 16.5(e)(1)(iv) involves two parts. First, a plaintiff must show that there was, in fact, a widespread and exceptional media interest focused on the matter encompassed in the requested records. Second, the record must demonstrate that there are possible questions about the government's integrity that affect public confidence. Ultimately, "[i]t is not sufficient that the request concerns an individual as to whom there is widespread and exceptional media interest." *Rolling Stone LLC v. DOJ*, 739 F. Supp. 3d 237, 244 (S.D.N.Y. 2024) (citation omitted). Instead, the request must both be about a relevant media interest *and* the request must pertain to the questions about government integrity affecting public confidence. *See id.*

The DOJ has long interpreted its regulation to require that "the matter of widespread public attention also be the matter in which possible questions about the government's integrity that affect public confidence exist." *Oversight*, 292 F. Supp. 3d at 507 (citations omitted). "The primary way to determine whether such possible questions exist is by examining the state of public coverage of the matter at issue, and whether that coverage surfaces possible ethics issues so potentially significant as to reduce public confidence in governmental institutions." *Id.* at 508.

## II. DFF Has Failed to Satisfy 28 C.F.R. § 16.5(e)(1)(iv) as to All Requests

DFF has generally failed to demonstrate that expedition is warranted, which is alone sufficient to deny its motion as to all requests. Begin with DFF's First Expedited Processing Letter. It set out various articles detailing news coverage of government action related to Epstein. The letter was broken down into two prongs. First, support for "widespread and exceptional media

interest."  Second, support for "questions about the government's integrity that affect public confidence."

As to its "widespread and exceptional media interest" section, DFF laid out general factual reporting on various purported government activities related to the Epstein case, as well as non-governmental activity.  First Expedited Processing Letter at 9-10 & n. 1-10.  Indeed, that section takes up the vast majority of DFF's letter.  Similarly, DFF's August 7 letter included a little over a dozen additional articles for the proposition that media interest in "the Trump Administration's handling of the Epstein matter has only continued to receive extensive media coverage."  Second Expedited Processing Letter at 57-58 n. 1-2.

But that a topic has been covered by media outlets, even a topic related to the government or governmental action, is insufficient to justify expedition under 28 C.F.R. § 16.5(e)(1)(iv).  *See, e.g., Oversight*, 292 F. Supp. 3d at 508 (explaining that "necessary media interest concerning [the Solicitor General's] nomination" was insufficient without specific media attention to the topic of the request, purported ethical issues and his involvement in controversial litigation).  Instead, DFF must demonstrate that the media attention relevantly, and sufficiently, implicates questions of government integrity affecting public confidence.  And it has failed to do so.

DFF provides three proposed questions in its letter, and four in its brief, to justify transforming general media interest into an expedition-worthy request.  But it offers only a handful of articles for each of its proposed questions, either in the footnote linked to the question in its First Expedited Processing Letter, or in the questions it raises in its brief.  That should not be considered sufficient to establish expedition under 28 C.F.R. § 16.5(e)(3).  After all, expedition analysis requires a "narrow application[.]"  *See Al-Fayed*, 254 F.3d at 310.  So the Court should conclude that DFF failed to justify expedition as to all its requests.

15

**III.    DFF Has Not Met its Burden to Show Expedited Processing is Warranted for its Specific Requests**

**A.  The Court Should Consider Whether Each Category of Records Sought by DFF Satisfies the Expedition Standard**

Across seven different letters, DFF requested a dozen different categories of records—varied in subject matter, scope, and timing.  But a plaintiff cannot simply deluge an agency with voluminous requests and expect a blanket grant of expedited processing.  Instead, the reviewing court must parse the record before the agency to determine whether expedited processing for each set of requested records is justified.  *See, e.g.*, *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98 & n.4 (D.D.C. 2020) (considering whether a single part of a request was justified under the 28 C.F.R. § 16.5(e)(1)(iv) expedition standard); *Oversight*, 292 F. Supp. 3d at 508 (finding that the record before the agency supported widespread and exceptional news coverage for plaintiff's request, but not possible questions about the government's integrity affecting public confidence related to that topic); *cf. Al-Fayed*, 254 F.3d at 311 (considering the compelling need standard and considering whether a "particular aspect of plaintiffs' allegations" satisfied one prong of the test); *see also EPIC I*, 355 F. Supp. 2d at 102 (considering the compelling need standard and explaining that "[t]he case law makes it clear that only public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment"); *Heritage Found. v. Dep't of State*, No. 24-cv-2862 (TJK), 2024 WL 4607501, at *8 (D.D.C. Oct. 29, 2024) (parsing whether plaintiffs had shown "public interest in the specific topics targeted by their FOIA requests" to obtain a preliminary injunction for expedited processing in a compelling need standard case).

Careful deconstructing of the requests is also required by the underlying principles governing expedited processing.  "Given the finite resources generally available for fulfilling

FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment." *See Al-Fayed*, 254 F.3d at 310 (citation omitted). And "an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Id.* (summarizing legislative findings). As a result, agencies and courts must be careful to determine whether a requestor has satisfied the expedition standard for each category of requested records. Otherwise, a clever requestor may simply submit a single omnibus request, covering both expedition-worthy and non-expedition-worthy categories, and circumvent the otherwise narrow scope of this special processing track.

### B. DFF Has Failed to Meet its Burden for the Twelve Categories of Records it Seeks

DFF has not attempted to justify each request with specificity, either in its expedition letters or in its brief to the Court. Instead, it sought to provide general analysis and questions on the theory that they would broadly support a blanket grant of expedition, no matter how disconnected a particular category of records was from the justification provided. The Court should look skeptically at such a lack of detailed support. *See* 28 C.F.R. § 16.5(e)(3); *cf. EPIC I*, 355 F. Supp. 2d at 102 ("The case law makes it clear that only public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment."). Certainly, the rule cannot be otherwise. If it were true that general news articles about an event automatically qualified an applicant for exigency, it would effectively "prioritiz[e] all requests." *Cf. Al-Fayed*, 254 F.3d at 310 (parsing a compelling need expedition request).

Consider first the FBI Staff Personal Information Request. This request seeks "[r]ecords reflecting all staff assigned to review Epstein-related records, such as a list of agent names; calendar entries of participants, or email including email addresses reflecting those staff." Ex. 1

17

at 39.  DFF has pointed to no media articles suggesting a particular interest in the identities and contact information for agents purportedly assigned to review Epstein-related records.  Such a category of requested records is entirely disconnected from the requestor's evidence in favor of expedition and should accordingly not receive expedited treatment.

The various email and correspondence requests suffer from a similar overbreadth problem.  The DOJ Correspondence Request, FBI Correspondence Request, Combined DOJ and FBI Correspondence Request, and White House, DOJ, and FBI Correspondence Request seek varied categories of records—from emails to summaries of oral communications—covering at least fourteen officials at the FBI and DOJ when the records include a communication "regarding the Jeffery Epstein matter."  Ex. 1 at 22-23, 28-29, 33-35.  But even the most generous reading of DFF's expedition letters does not suggest sufficient support to expedite whether an advisor to the Deputy Director of the FBI sent any calendar invitation regarding the Jeffrey Epstein matter.  And more broadly, DFF's support for expedition does not justify casting such a wide net covering all correspondence among those individuals on the general subject of Epstein.

The DOJ Email Request and FBI Email Request are overbroad for the same reasons—they include far too many people disconnected from DFF's underlying support for expedition.  *Id.* at 23, 29.  And they suffer from an additional overbreadth problem.  DFF specified five search terms: "Client List"; "Epstein"; "Flight Logs"; "Ghislaine Maxwell"; "Whistleblower."  *Id.*  At least two of those terms, "Flight Logs" and "Whistleblower" appear not once in the main text of DFF's First Expedited Processing Letter, Second Expedited Processing Letter, or brief in support of summary judgment.  And those terms are likely to cover topics entirely outside of DFF's justification for expedited processing.  All told, DFF has also failed to sufficiently justify expedition for these requests.

18

Next, the FBI Mentions of President Trump Request and FBI Directives and Guidance Request seek records regarding a purported review of Epstein-related records. *Id.* at 39. But these requests for training materials and references to the President are not specifically justified in either of DFF's expedited processing letters, nor explained in its brief.

DFF's July 28 request, for "records reflecting all correspondence between Donald J. Trump and Jeffrey Epstein" from January 1, 1990 to the date of the search from both DOJ and FBI does not merit expedited processing, either. Trump-Epstein Correspondence Request at 45-46. DFF sought over three decades of records but has made no effort to explain why such a substantial search is linked to its justification for expedition.

Finally, the Attorney General Materials Request and Attorney General Briefing Request are more specifically tied to DFF's justification for expedition. Indeed, the basis underlying the two requests would appear to be one of DFF's proposed questions: whether "Attorney General Bondi misled the American people in representing that the 'client list' was on her desk and ready for review or in representing that additional information related to the Epstein matter would be released[.]" First Expedited Processing Letter at 12 & n. 11.

DFF has not provided sufficient support to justify this potential question and therefore a request premised on it should not receive expedition. DFF cited four articles in its letter. *Id.*; Pl.'s MSJ at 14 (citing 5 articles). Two of the articles cited in DFF's letter simply provide factual reporting, from February, of the Attorney General's earlier statement.[4] Neither includes media

---

[4] Haley Chi-Sing, "*Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files*," FOX News (February 21, 2025), https://www.foxnews.com/politics/bondi-says-epstein-client-list-sitting-my-desk-right-now-reviewing-jfk-mlk-files; Greta Cross, "*AG Pam Bondi plans to release flight logs, names related to Jeffrey Epstein on Thursday*," USA Today (February 27, 2025), https://www.usatoday.com/story/news/politics/2025/02/27/jeffrey-epstein-flight-logs-names-pam-bondi/80690426007/ .

reporting raising any question of government integrity.  The next article includes the Attorney General's statement clarifying that she meant the relevant files were on her desk, not a specific client list, and otherwise focuses on the Attorney General's commitment to transparency.[5]  The final article describes "pressure" on the Attorney General, but only briefly mentions the client list and not in the context of any alleged misleading statements.[6]

DFF cites in its brief four additional articles in the record before the agency that do question the Attorney General's statement regarding a "client list," mostly citing statements by members of Congress.[7]  Pl.'s MSJ at 14 (quoting additional four articles).  But those articles include that the Attorney general clarified her statement.  And a potentially misleading statement does not raise "possible ethics issues so potentially significant as to reduce public confidence in governmental institutions."  *See Oversight*, 292 F. Supp. 3d at 508.

So DFF does not provide support for expedition related to that question—one that the Attorney General has since clarified.  As a result, expedition for those two requests is not warranted.

---

[5] Bart Jansen and John Kennedy, "*Bondi pledged 'transparency' on Epstein files, but grapples with how much*," USA Today (July 27, 2025), https://www.usatoday.com/story/news/politics/2025/07/27/pam-bondi-jeffrey-epstein-release-criminal-file/85338256007/.

[6] Eric Tucker and Alanna Durkin Richer, "*Mystery surrounds the Jeffrey Epstein files after Bondi claims 'tens of thousands' of videos*," Associated Press (July 1, 2025), https://apnews.com/article/justice-department-jeffrey-epstein-pam-bondi-trump-fa39193d5b5ff91970428bf077a5ce44.

[7] Articles relying on statements from members of Congress should be taken with a grain of salt.  The regulation speaks to the "public confidence", not the confidence of the President's political rivals.

## CONCLUSION

For the foregoing reasons, the Court should deny DFF's motion for summary judgment.


Dated: September 8, 2025                     Respectfully submitted,

                                             BRETT A. SHUMATE
                                             Assistant Attorney General, Civil Division


                                             ELIZABETH J. SHAPIRO
                                             Deputy Branch Director


                                             */s/ Jason K. Altabet*
                                             JASON K ALTABET
                                             Trial Attorney (Md. Bar No. 2211280012)
                                             Federal Programs Branch
                                             U.S. Department of Justice, Civil Division
                                             1100 L St. NW
                                             Washington, DC 20005
                                             Tel: (202) 305-0727
                                             Email: jason.k.altabet2@usdoj.gov

                                             *Counsel for Defendants*

21