**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, | |
| *Plaintiff*, | |
| vs. | |
| | Case No. 25-cv-2597-TSC |
| U.S. DEPARTMENT OF JUSTICE et al., | **Oral Argument Requested** |
| *Defendants*. | |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

    I.    Under any standard of review, DFF's FOIA requests concerning the Trump Administration's handling of the Epstein case and its files are entitled to expedited processing. ........................................................................................................ 2

      A.  All DFF's FOIA requests involve a discrete "matter"—the Trump Administration's recent handling of the Epstein case and its files—that warrants expedition..................... 2

      B.  DFF's expedition requests plainly implicate government integrity raised by reporting on the Trump Administration's handling of the Epstein case and its files. ........................... 6

      C.  Defendants' cherry-picked terms and custodians do not change the conclusion that expedition is appropriate. ................................................................................... 8

    II.   Deference is not, in any case, owed to Defendants' "constructive" denial and litigating positions. ..................................................................................................... 15

CONCLUSION................................................................................................................ 19

**INTRODUCTION**

Democracy Forward Foundation ("DFF") seeks expedited processing of its Freedom of Information Act ("FOIA") requests concerning a matter dominating the headlines with concerns about government officials' conduct: the Trump Administration's handling of the Epstein case and its files. This case easily meets the standard of the Department of Justice's ("DOJ") regulation that provides for expedition of requests that "involve . . . a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Defendants—only offering reasoning now in litigation—maintain that not even one of DFF's records requests concerning this matter meets this standard.

In so arguing, Defendants seek to slice the Administration's handling of the Epstein case and DFF's requests so thin that no expedition request could ever be justified. They argue—contrary to their own past practice and the regulation's plain text—that the recent handling of the Epstein case described in detail in DFF's requests is not a "matter" within the meaning of their regulation but is instead "various purported government activities related to the Epstein case." Opp'n at 15. This ignores common sense, the direct connections DFF draws in its expedition requests between Epstein matter activities, and the cited media's treatment of the Administration's handling of this single criminal case over a short period as a unified matter.

Seeking to further slice the matter and requests at issue here, Defendants cherry-pick from DFF's FOIA requests to advance arguments that if even one aspect of a single records request has not independently garnered significant media attention, expedited processing should be denied for the whole FOIA request—an approach contradicted by the case Defendants cite in support, *Brennan Center v. Dep't of Comm.*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020), and incompatible with a reasonable interpretation of their regulation. Moreover, even Defendants' selective parsing does

not withstand scrutiny when examined against the ample record DFF has provided.

DFF easily meets the standard for expedited processing under any standard of review. Defendants, nevertheless, seek deference for their "constructive" denial of DFF's expedition requests. Because the agency never issued an administrative decision here, there is nothing to defer to. And the relevant standards Defendants now articulate in litigation depart from Defendants' past practice. There is no basis on which to defer to Defendants.

## ARGUMENT

I. **Under any standard of review, DFF's FOIA requests concerning the Trump Administration's handling of the Epstein case and its files are entitled to expedited processing.**

Expedited processing is warranted for DFF's FOIA requests at issue regardless of whether the Court affords Defendants some degree of deference in its review. As discussed below, however, *infra* Sec. II, deference is not warranted for Defendants' "constructive" denial and litigating positions here. But the Court need not reach that issue because under any reasonable application of Defendants' expedited processing regulation to the record, DFF's FOIA requests all plainly "involve" "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

A. **All DFF's FOIA requests involve a discrete "matter"—the Trump Administration's recent handling of the Epstein case and its files—that warrants expedition.**

Defendants object, variously, that DFF has "generally failed" to show expedition is warranted, Opp'n at 14-15, and also that select aspects of DFF's FOIA requests do not meet the standard for expedited processing, *id.* at 16-20. A central thrust of Defendants' argument appears to be that DFF is not entitled to expedited processing because it has not shown that "each category

2

of records sought" meets § 16.5(e)(1)(iv), and that DFF's FOIA requests involve "various purported government activities" rather than a single "matter." Opp'n at 15, 16. But § 16.5(e)(1)(iv) does not speak of "categories of records," it requires DOJ to process on an expedited basis "requests" that "involve" "*a matter* of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv) (emphasis added).

All DFF's FOIA requests "involve" the "matter" of the Trump Administration's recent handling of the Epstein case and its case files. ECF No. 4-2 at 46 [Expedited Freedom of Information Act Request]; *id*. at 9 [Request for Expedited Processing for Recently Submitted Requests] (explaining the FOIA requests seek (1) records of high-ranking officials communications likely to concern Epstein matter, (2) records related to Attorney General's statements and actions concerning Epstein matter, and (3) records related to the recent review of Epstein case records connected to President Trump). DFF supported its requests for expedited processing of these records requests with detailed evidence of the widespread media coverage of that matter and multiple questions concerning governmental integrity raised within that reporting. *Id.* at 10-14, 46-50.

Defendants' arguments to the contrary seek to divide the handling of this single case and its files into "various purported government activities related to the Epstein case," and to implicitly argue that *each* of those activities constitutes its own mini-"matter" that must itself receive extraordinary news coverage and raise particular questions concerning government integrity. Opp'n at 14-20. Defendants further seek to require DFF to have shown that each aspect of each of its FOIA requests—down to the level of every key term and record custodian—is directly tied to a qualifying mini-matter. *See* Opp'n at 18. But this is not what "matter" means. Instead, its ordinary

meaning is "a subject under consideration," *see Matter*, *Merriam-Webster Online Dictionary*, https://perma.cc/6AX3-DLJT, or "[a] topic that is under discussion," *see Matter*, *Justia Legal Dictionary*, https://perma.cc/GP4X-CTJP; *see also  Milice v. CPSC*, 2 F.4th 994, 1000 (D.C. Cir. 2021) ("Where '[an] agency does not define [a] term by regulation," the regulatory term "is accorded its 'ordinary meaning.'").

Consistent with this ordinary meaning, the "matter"—or "subject under consideration"—of DFF's requests for which it has sought expedition is the Trump Administration's recent handling of the Epstein case and its files. *See* ECF No. 4-2 at 10; *id.* at 46. Indeed, as discussed *infra* Sec. II., DOJ *itself* has previously treated a "matter" as such an overarching "subject under consideration" even in the cases Defendants rely on in their opposition. *See Brennan Ctr. for Just. v. Dep't of Com.*, No. 1:20-cv-02674 (TJK), ECF No. 20-1, ¶ 9 (D.D.C. Oct. 13, 2020) (DOJ granted expedition for requests broadly concerning the 2020 Census); *Am. Oversight v. U.S. Dep't of Just.,* 292 F. Supp. 3d 501, 506-07 (D.D.C. 2018) (DOJ treated the matter generally as "the nomination" of an official even as request sought records related to various activities of that nominated official).

DFF's requests for expedited processing do describe different aspects of the matter of the Administration's handling of the Epstein case, but these are all connected constituent government actions and developments within a single matter. Specifically, DFF described: the Administration's initial representations about transparency concerning the Epstein case files,[1] the Attorney General's questionable comments about those files and the Administration's reversal of

---

[1] *See* ECF No. 4-2 at 10, 12, 47, 49 (citing e.g., Adam Shaw, *Kash Patel Vows to 'Do Everything' To Help GOP Senator Expose Epstein Files*, Fox News (Jan 30, 2025), https://perma.cc/3QGZ-AVUB; Bart Jansen et. al, "*Bondi pledged 'transparency' on Epstein files, but grapples with how much,*" USA Today (July 27, 2025), https://perma.cc/6LGV-RYNZ).

its transparency position,[2] the subsequent review of those files following public pushback to the reversal,[3] the Attorney General's subsequent reporting to the President that he is mentioned in the files,[4] and the subsequent interviewing and leniency considerations for Epstein's convicted co-conspirator following public uproar.[5] Tellingly, media reports cited in DFF's expedition requests repeatedly recount these enumerated aspects within the same news stories, demonstrating that the Trump Administration's recent handling of the Epstein case and its files is viewed as a single matter. *See* ECF No. 4-2 at 12, 13; *id.* at 49, 50; *id.* at 58 [Follow-up Regarding Request for Expedited Processing].[6] The common-sense conclusion is that actions and statements related to a

---

[2] *See* ECF No. 4-2 at 11, 12, 48, 49 (citing e.g., Haley Chi-Sing, "*Bondi says Epstein client list 'sitting on my desk right now,' and is reviewing JFK, MLK files,*" FOX News (February 21, 2025), https://perma.cc/Y697-N6J7; Eric Tucker & Alanna Durkin Richer, *Epstein 'client list' doesn't exist, Justice Department says, walking back theory Bondi had promoted*, Associated Press (July 7, 2025), https://perma.cc/EE5TRENV).

[3] *See* ECF No. 4-2 at 11, 12, 46, 47 (citing e.g., Adam Goldman & Alan Feuer, *How a Frantic Scouring of the Epstein Files Consumed the Justice Dept.*, N.Y. Times (July 24, 2025), https://perma.cc/RLL2-2BVP; Nnamdi Egwuonwu, *FBI Personnel Were Told to Flag Epstein Files Mentioning Trump, Senate Democrat Says*, NBC News (July 19, 2025), https://perma.cc/HN8X-F7YL?type=image).

[4] *See* ECF No. 4-2 at 11, 12, 46, 49 (citing e.g., Sadie Gurman, et. al, *Justice Department Told Trump in May That His Name Is Among Many in the Epstein Files*, Wall St. J. (Jul. 23, 2025), https://perma.cc/8VE5-QKWD; Aaron Blake, "*Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them,*" CNN (July 24, 2025), https://perma.cc/7BFF6KV5).

[5] *See* ECF No. 4-2 at 13, 15, 49, 52, 58 (citing e.g., Sarah Ewall-Wice, *Ghislaine Handed DOJ 100 Names in Shameless Pardon Quid Pro Quo*, Daily Beast (July 26, 2025), https://perma.cc/UF5C-ZR8X; Glenn Thrush et al., "*After Ghislaine Maxwell Interview, Concerns Mount Over Possibility of Pardon,*" N.Y. Times (July 25, 2025), https://perma.cc/P4Y2X2HL; Rich Schapiro, *Ghislaine Maxwell's Transfer to Cushy Prison Camp is a 'Travesty of Justice,' Ex-BOP Official Says*, NBC News (Aug. 5, 2025), https://perma.cc/944D-DN83?type=image).

[6] *See* ECF No. 4-2 at 12, 13, 49, 50, 58 (citing e.g., Amber Phillips, *What to Know About the Metastasizing Jeffrey Epstein Controversy*, The Wash. Post (Jul. 28, 2025), https://perma.cc/7FZM-QEPY (detailing above developments in explaining "[h]ere's what's going on, how we got here and why the controversy has staying power"); Jordana Comiter, *What Are the Epstein Files? Everything to Know About the Classified Documents Related to Jeffrey Epstein's Criminal History*, People (July 30, 2025), https://perma.cc/Z4PP-68UW (substantively similar); Aaron Blake, "*Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them,*" CNN (July 24, 2025), https://perma.cc/7BFF6KV5 (providing a timeline of

single criminal case by a small handful of senior officials over a short period of time are not, as Defendants suggest, distinct and separate matters, Opp'n at 14-15, but rather are constituent parts of one "subject under consideration"[7] and one "topic that is under discussion"[8]: the Trump Administration's recent handling of the Epstein case and its files.

By any reasonable measure, this "matter" plainly "involves" "widespread and exceptional media interest in which there exist possible questions about the government's integrity." 28 C.F.R. § 16.5(e)(1)(iv). In the record before the agency, DFF cited more than sixty public reports concerning the Trump Administration's handling of the Epstein case. And, as next discussed, DFF showed these reports raise numerous questions concerning the government's integrity. *See* Pl.'s Mem. in Supp. Mot. for Summary J., at 11-18, ECF No. 4-1; ECF No. 4-2 at 9-16, *id.* at 45-55; *id.* at 57-59.

### B. DFF's expedition requests plainly implicate government integrity raised by reporting on the Trump Administration's handling of the Epstein case and its files.

Contrary to Defendants' inaccurate generalizations, DFF's expedition requests highlight precise and specific questions about government integrity that the cited media raised regarding the Government's handling of the Epstein case and its files. *See* Opp'n at 14-15. Specifically, DFF's expedition requests identified questions as to whether:

1) Attorney General Bondi misled the American people in representing that the "client list" was on her desk and ready for review or in representing that additional information related to the Epstein matter would be released?

2) The Trump Administration has reversed course on the decision to disclose the Epstein matter files out of a desire to cover-up the content within for political or personal reasons

above developments from February 21 to July 23); Glenn Thrush et al., *After Ghislaine Maxwell Interview, Concerns Mount Over Possibility of Pardon*, N.Y. Times (July 25, 2025), https://perma.cc/P4Y2X2HL (substantively similar and detailing subsequent Maxwell interviews).
[7] *Supra Merriam-Webster*, p. 3-4.
[8] *Supra Justia Legal Dictionary,* p. 3-4.

rather than out of a desire to protect traditional law enforcement interests? This concern includes whether the administration reversed course to prevent the release of files that relate to President Trump.

3) The Trump Administration's engagement in this matter presents serious conflicts of interest? This includes questions about whether there are conflicts raised through Deputy Attorney General Todd Blanche's questioning of an Epstein co-conspirator after serving as President Trump's personal lawyer and President Trump's contemporaneous refusal to rule out pardoning that co-conspirator.

ECF No. 4-2 at 12-13; *id.* at 48-49.

The articles DFF included in its expedition requests make plain that the intense media interest in the matter is focused on the above ethical questions. For example, DFF's expedition requests include the following articles:

- *Epstein 'Client List' Doesn't Exist, Justice Department Says, Walking Back Theory Bondi Had Promoted*;
- *Justice Department Told Trump in May That His Name Is Among Many in the Epstein Files*;
- *Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them*;
- *Most Americans Think Epstein Files Contain 'Embarrassing' Info About Trump;*
- *DOJ faces credibility questions as it investigates Jeffrey Epstein*;
- *Why the Huge Conflicts of Interest Among Trump's Epstein Team Matter*;
- *Epstein furor undermines public trust, Republican election hopes, two US lawmakers say*;
- *Ghislaine Handed DOJ 100 Names in Shameless Pardon Quid Pro Quo*;
- *Ghislaine Maxwell's Move to 'Country Club' Prison Smacks of Special Treatment;*
- *FBI Personnel Were Told to Flag Epstein Files Mentioning Trump, Senate Democrat Says;*
- *Outraged Trump Supporters Not Placated by DOJ's Actions on Epstein;*
- *Bondi pledged 'transparency' on Epstein files, but grapples with how much;*
- *Trump Really Wants to Stop Talking About Epstein: A Timeline;*
- *Trump Ridiculed for Claiming He Didn't Know About Ghislaine Maxwell's Jail Move;*
- *Epstein Victims Knock FBI, DOJ Over Handling of Case;*
- *Ghislaine Maxwell's Transfer to Cushy Prison Camp is a 'Travesty of Justice,' Ex-BOP Official Says;*
- *Polls Shows Widespread Disapproval and Suspicion of Trump's Handling of Epstein Files*;
- *Family of Epstein Abuse Survivor Urges Trump Not to Pardon Ghislaine Maxwell*: '*A Monster Who Deserves to Rot in Prison,'*;
- *How Trump's Personal Attorney Wound Up Investigating the Epstein Case at DOJ.*

ECF No. 4-2 at 9-16; *id.* at 45-55; *id.* at 57-59.

In light of the above, Defendants cannot credibly contend, as they try, that a blanket disqualification is appropriate for *all* DFFs' requests. *See* Opp'n at 15.[9] Given the difficult facts for Defendants, they dedicate the vast majority of their argument to cherry-picking particular terms and records custodians within DFF's FOIA requests to argue that those elements do not warrant expedited processing. As discussed below, each of these arguments is unavailing.

### C. Defendants' cherry-picked terms and custodians do not change the conclusion that expedition is appropriate.

A review of the record shows that DFF provided news reports raising ethical questions on each of the constituent government actions and developments within the overarching matter of the Administration's handling of the Epstein case and its files that DFF's requests involve. Defendants, nevertheless, ignore this record and cherry-pick particular search terms and custodians to argue that if a single aspect of a records request purportedly does not warrant expedited processing, expedition should be denied as to the entire request. Defendants' novel slicing approach is unsupported by any prior case law. Indeed, the only case Defendants offer to directly support this approach is dicta from a short footnote in *Brennan*. Opp'n at 16 (citing 498 F. Supp. 3d 87, 98 &

---

[9] In a last-ditch effort to justify a blanket refusal to grant expedited processing to even a single request, Defendants argue that DFF has submitted too few articles "for *each* of its proposed questions" about the government's integrity. Opp'n at 15 (emphasis added). And that the particular placement of articles within particular footnotes is decisive, such that only those articles in the footnotes of particular questions—and not those in other places within the expedition request— can be considered. *Id.* at 15, 19. Section 16.5(e)(1)(iv) neither requires nor supports this approach. The "matter" that DFF's FOIA requests "involve" is the Trump Administration's recent handling of the Epstein case and its files. The above list of articles—which is not even an exhaustive sampling from DFF's expedition requests—sufficiently shows that this matter has attracted widespread and exceptional media interest in which there exist possible questions about the government's integrity. *See* 28 C.F.R. § 16.5(e)(1)(iv); *see also ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004) (crediting just "a handful of articles"). DFF need not also show that each "question[] about the government's integrity" associated with the matter has *itself* attracted widespread and exceptional media interest with intensive particularity.

n.4 (D.D.C. 2020)).[10] But the Court's actual holding in *Brennan* was that expedition *was* warranted even where a request would capture a "broader set of documents" related to the general matter of the "2020 Census" because the requester had "in most cases" shown aspects of its request were linked to that matter. 498 F. Supp. 3d at 98. That case undermines, rather than supports, Defendants' selective term-by-term and custodian-by-custodian parsing of DFF's requests here.

In any event, DFF's FOIA requests and expedited processing requests show that even the particular aspects of DFF's records requests that Defendants selectively highlight still *do* warrant expedited processing:

*First*, Defendants' argument that "the Attorney General Materials Request and Attorney General Briefing Request" do not merit expedited processing strains credulity. Opp'n at 19. DFF seeks materials prepared or compiled by DOJ for Attorney General Bondi's review of the Epstein case files and briefing materials for her meetings with President Trump regarding Epstein. Compl. ¶ 40; ECF No. 4-2 at 17-18. Defendants contend that the only ethical question implicated by these records is whether Attorney General Bondi misled the American people regarding the so-called "client list." Opp'n at 19. While the Attorney General's "client list" comments certainly did raise questions about government integrity, as evidenced by the reporting DFF cited, *see* Pl.'s Mem. at 14; ECF No. 4-2 at 10-14, 46-50, it is certainly not the *only* ethical question implicated by the records sought here.

As the media reports DFF cites make clear, Attorney General Bondi: made inconsistent statements on whether the Epstein files should be released;[11] oversaw the Department's review of

_____

[10] Defendants also cite to *American Oversight* and *Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) in this section of their opposition, but they point to no relevant discussion that supports the level of granularity in review advanced here. Moreover, as discussed *infra* Sec. II, Defendants cite *Al-Fayed*'s construction of a different basis for expedited processing that is not controlling here.

[11] *Supra* notes 1 & 2.

9

those files following public pushback (including a reported "frantic scouring" of those files for references to President Trump);[12] informed the President that his name appears in those files;[13] and oversees the official who interviewed Epstein's convicted co-conspirator for leniency consideration.[14] The Attorney General's role and conduct implicate each of the ethical questions reported by the media and raised by DFF to the agency: Whether the Attorney General misled the American public with her comments? Whether the Trump Administration has reversed course on disclosing Epstein materials for political and/or personal reasons? And whether the Trump Administration's engagement presents serious conflicts of interest? *See* ECF No. 4-2 at 12-13, 48-49. The records requested—those reflecting the Attorney General's review of the Epstein files and preparation for meetings with the President on them, Compl. ¶ 40, ECF No. 4-2 at 17-18—will shed light on the ethical questions raised in the reporting DFF's expedition requests cite.[15]

*Second*, Defendants argue DFF's correspondence requests seeking the communications since January of the highest-ranking DOJ and FBI officials concerning the Epstein matter,

---

[12] *Supra* note 3.

[13] *Supra* note 4.

[14] *Supra* note 5.

[15] *See* ECF No. 4-2 at 11, 12, 13, 47, 48, 49 (citing e.g., Eric Tucker & Alanna Durkin Richer, *Epstein 'client list' doesn't exist, Justice Department says, walking back theory Bondi had promoted*, Associated Press (July 7, 2025), https://perma.cc/EE5TRENV; Bart Jansen et. al, "*Bondi pledged 'transparency' on Epstein files, but grapples with how much*," USA Today (July 27, 2025), https://perma.cc/6LGV-RYNZ; Eric Tucker et. al, "*Mystery surrounds the Jeffrey Epstein files after Bondi claims 'tens of thousands' of videos*," Associated Press (July 1, 2025), https://perma.cc/7G2X-PJK2; Nnamdi Egwuonwu, *FBI Personnel Were Told to Flag Epstein Files Mentioning Trump, Senate Democrat Says*, NBC News (July 19, 2025), https://perma.cc/HN8X-F7YL?type=image; *DOJ faces credibility questions as it investigates Jeffrey Epstein*, NPR (July 25, 2025), https://perma.cc/M3WE-C7D8; Sadie Gurman et al., *Justice Department Told Trump in May That His Name Is Among Many in the Epstein Files*, Wall St. J. (July 23, 2025), https://perma.cc/8VE5-QKWD; Glenn Thrush et al., "*After Ghislaine Maxwell Interview, Concerns Mount Over Possibility of Pardon*," N.Y. Times (July 25, 2025), https://perma.cc/P4Y2X2HL; Philip Rotner, *Why the Huge Conflicts of Interest Among Trump's Epstein Team Matter*, The Bulwark (July 25, 2025), https://perma.cc/K9SA-TU7A).

including those between main DOJ and the FBI and with the White House, fail to meet the expedition standard because of purported "overbreadth." Opp'n at 18.[16] But these records requests seek the communications of the most senior officials serving at Defendants' agencies, including the Attorney General, the Deputy Attorney General, and the Director and Deputy Director of the FBI. Compl. ¶¶ 47, 54, 62; ECF No. 4-2 at 22-24, 28-29, 33-35. *All* these officials have been named specifically in reporting concerning the handling of the Epstein case that DFF provided to the agency.[17] The requests also seek the relevant communications of these officials' chiefs of staff and immediate advisors, based on the reasonable conclusion that Senate-confirmed agency leaders are likely to operationalize government action through their immediate subordinates. Straining to argue that these records requests are not sufficiently connected to the Epstein matter, Defendants conjure a hypothetical communication of the most junior of these very senior employees—an advisor to the Deputy Director of the FBI—to argue that their communications about the Epstein case are unimportant. Opp'n at 18.  But it is just as likely that an advisor to FBI Deputy Director

---

[16] DFF notes, despite Defendants' protestations about the breadth of these FOIA requests, DFF expressly limited some aspects of its communications requests to only those <u>sent</u> by the specified high-ranking officials to reduce the number of responsive records. *See* ECF No. 4-2 at 23, 29.

[17] *See* ECF No. 4-2 at 10-14, 46-50, 57-59 (citing e.g., Alayna Treene, et al., *Top Trump Officials Will Discuss Epstein Strategy at Wednesday Dinner Hosted by Vance*, CNN (Aug. 5, 2025), https://perma.cc/86RX-4FLJ (reporting Epstein strategy meeting between Attorney General Bondi, FBI Director Patel, Deputy Attorney General Blanche and White House chief of staff Susie Wiles and Vice President JD Vance); Eric Tucker & Alanna Durkin Richer, *Epstein 'client list' doesn't exist, Justice Department says, walking back theory Bondi had promoted*, Associated Press (July 7, 2025), https://perma.cc/EE5TRENV; Ryan Lucas, *Todd Blanche's Past Hangs Over Him as Top DOJ Official on Epstein Case*, NPR (Jul. 29, 2025), https://perma.cc/9BUG-Y5BE; Eric Tucker et. al, "*Mystery surrounds the Jeffrey Epstein files after Bondi claims 'tens of thousands' of videos*," Associated Press (July 1, 2025), https://perma.cc/7G2X-PJK2 (reporting "[t]he situation was further muddied by recent comments from FBI Director Kash Patel . . . that did not repeat Bondi's account" on findings from Epstein review); Aaron Blake, "*Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them*," CNN (July 24, 2025), https://perma.cc/7BFF6KV5 (detailing reversal in position and inconsistent statements by FBI Deputy Director Dan Bongino on Epstein)).

Bongino—who media cited in DFF's expedition requests report has "clashed" with the Attorney General over the Epstein matter[18]—would have communications that reflect the views and directions of one of the most senior government officials reportedly involved in the handling of the Epstein matter. And Defendants offer no justification whatsoever for why the communications of the Attorney General, Deputy Attorney General, FBI Director, Deputy FBI Director, or their chiefs of staff concerning the Epstein matter would not warrant expedited processing. Opp'n at 18.

*Third*, Defendants slice DFF's requests for email communications of senior officials by arguing that two of five key terms—"Flight Logs" and "Whistleblower"—are unsupported by DFF's expedited processing requests. Opp'n at 18. But DFF's expedited processing requests contain an article titled: "*AG Pam Bondi plans to release **flight logs**, names related to Jeffrey Epstein on Thursday*."[19] And other cited articles raise questions arising from the multiple appearances of President Trump's name in those flight logs.[20] Numerous articles included in DFF's expedition requests, likewise, discuss potential "whistleblowers" in the Epstein matter.[21]

---

[18] *See* ECF No. 4-2 at 11, 48 (citing e.g., Sadie Gurman et al., *Justice Department Told Trump in May That His Name Is Among Many in the Epstein Files*, Wall St. J. (July 23, 2025), https://perma.cc/8VE5-QKWD (reporting "clash" between Bongino and Bondi over handling of the Epstein files).

[19] *See* ECF No. 4-2 at 12, 49 (emphasis added) (citing Greta Cross, "*AG Pam Bondi plans to release flight logs, names related to Jeffrey Epstein on Thursday*," USA Today (Feb. 27, 2025), https://perma.cc/CVH2-J7NG?type=standard).

[20] *See* ECF No. 4-2 at 12, 48 (citing e.g., Khadeeja Safdar & Joe Palazzolo, *Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was from Donald Trump*, Wall St. J. (July 17, 2025), https://perma.cc/4P46-KD4W (reporting President Trump's name "appeared several times on flight logs for Epstein's private jet" and that "[t]here remain questions about what the FBI possesses about Epstein and his well-connected friends")).

[21] *See* ECF No. 4-2 at 10, 11, 47 (citing e.g., Jeremy Roebuck, *Trump DOJ releases some Epstein files, says there's little new info*, Wash. Post (Feb. 27, 2025), https://perma.cc/E4BS-SCL7 (reporting Bondi said she had "been informed by 'a source'" that FBI agents had withheld "'thousands of pages of documents'" related to Epstein); Adam Goldman & Alan Feuer, *How a Frantic Scouring of the Epstein Files Consumed the Justice Dept.*, N.Y. Times (July 24, 2025), https://perma.cc/RLL2-2BVP (reporting the FBI's "own expert document reviewers raised

Strikingly, though, Defendants offer no justification, nor could they, for why most of the listed terms—"client list," "Epstein," and "Ghislane Maxwell"—are supposedly unsupported by DFF's expedition requests.

*Fourth*, Defendants argue in a summary sentence that expedited processing of the "FBI Records Review Request," Compl. ¶ 58, ECF No. 4-2 at 39-40—which seeks instructions and directives for the recent review of the Epstein files, records showing the staff assigned to conduct the review,[22] and records reflecting mentions of President Trump within that review—is not "specifically justified" in DFF's expedited processing requests. Opp'n at 19. This assertion flatly ignores the fact that DFF's expedition requests describe "the reported scouring of Epstein records by hundreds of DOJ and FBI employees, who reportedly worked around the clock to find relevant materials, including any mentions of the President," ECF No. 4-2 at 11, 47, and that DFF explained that the reporting raised the question of whether:

> The Trump Administration has reversed course on the decision to disclose the Epstein matter files **out of a desire to cover-up the content within for political or personal reasons** rather than out of a desire to protect traditional law enforcement interests? This concern includes whether the administration reversed course **to prevent the release of files that relate to President Trump**.

ECF No. 4-2 at 12, 49 (emphasis added); Pl.'s Mem. at 15-18. DFF's requests point to numerous media articles raising these questions concerning government integrity.[23] Defendants' conclusory

---

concerns at one point that the investigation was not only being rushed, but could also violate laws and internal protocols")).

[22] Defendants treat this aspect of the request as seeking an entirely different category records, *see* Opp'n at 17, but the information about which staff carried out the Epstein review directives is plainly relevant and connected to how the directives themselves were operationalized.

[23] ECF No. 4-2 at 12, 49 (citing Aaron Blake, *Timeline suggests Trump team changed its tune on Epstein files after Trump was told he was in them*, CNN (July 24, 2025), https://perma.cc/7BFF6KV5; Chris Cameron, *Trump Really Wants to Stop Talking About Epstein: A Timeline*, N.Y. Times (July 23, 2025), https://perma.cc/U4GB-NJEC; Hady Mawajdeh & Sean Rameswaram, *Why doesn't Donald Trump want to release the Epstein Files?*, Vox (July 17, 2025), https://perma.cc/FQ29-HR5H; Adam Goldman & Alan Feuer, *How a Frantic Scouring of the*

statements are inconsistent with the record before the agency.

*Finally*, Defendants argue that DFF's FOIA request for "records reflecting all correspondence between Donald J. Trump and Jeffrey Epstein" from the Epstein case files seeks "over three decades of records" with no "effort to explain why such a substantial search is linked" to its expedition requests. Opp'n at 19. In so arguing, Defendants ignore specific language that directly links the request to Defendants' recent review of the Epstein case files and, thus, makes the request much less burdensome than Defendants suggest. The request states: "reporting indicates that Epstein case records were recently reviewed, including in March of this year, for mentions of President Trump." Compl. ¶¶ 70, 71; ECF No. 4-2 at 45-46. This reporting suggests Defendants have recently reviewed and flagged the requested correspondence records in their possession and sought by DFF.[24] For the reasons discussed immediately above concerning the FBI Records Review request, expedited processing is warranted for this request for records directly connected to the Administration's recent handling of the Epstein case and its files.[25]

In short, even crediting *arguendo* Defendants' position that DFF must show "each category of requested records" satisfy § 16.5(e)(1)(iv)'s criteria, Opp'n at 1, 17, the particular aspects of DFF's records requests that Defendants selectively highlight *do* warrant expedited processing. Defendants' unpersuasive selective arguments as to each records request only make more glaring their refusal to grant expedited processing as to even a *single* request.

---

*Epstein Files Consumed the Justice Dept.*, N.Y. Times (July 24, 2025), https://perma.cc/RLL2-2BVP).

[24] ECF No. 4-2 at 11, 46 (citing e.g., Nnamdi Egwuonwu, *FBI Personnel Were Told to Flag Epstein Files Mentioning Trump, Senate Democrat Says*, NBC News (July 19, 2025), https://perma.cc/HN8X-F7YL?type=image).

[25] *Supra* note 23.

**II.    Deference is not, in any case, owed to Defendants' "constructive" denial and litigating positions.**

Defendants finally argue that "deference" is owed to their "constructive denial" of DFF's expedition requests, although nowhere prior to litigation did they advance any reasoning regarding denial. Opp'n at 13. Defendants offer no authority that this court should defer to their "constructive" denial or to their novel interpretation of DOJ's expedition regulation. Indeed, Defendants' past practice demonstrates that the construction of § 16.5(e)(1)(iv) they advance here is a litigating position and not a longstanding agency interpretation. Defendants' additional citations to inapposite authority provide no help. Deference is not owed. *See Shieldalloy Metallurgical Corp. v. Nuclear Regul. Comm'n*, 768 F.3d 1205, 1208-09 (D.C. Cir. 2014) (deference is inappropriate where an agency's interpretation is "inconsistent with the regulation" and where its interpretation "first appears during litigation" and "conflicts with prior interpretations" (citations omitted)).

As an initial matter, Defendants argue that their "constructive denial" of DFF's expedition requests are entitled to deferential, rather than *de novo*, review because DFF is seeking expedition under DOJ's regulation at 28 C.F.R. § 16.5(e)(1)(iv). Opp'n at 12-14. But there is no agency decision interpreting DOJ's regulation in the record. Defendants cite no authority holding that deference is appropriate when the agency fails to make a decision through a "constructive denial." Instead, they cite to *American Oversight* and *Al-Fayed*. Opp'n at 13 (citing *Am. Oversight*, 292 F. Supp. 3d at 506 and *Al-Fayed v. CIA*, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001)). But in those cases, the agencies had issued determinations denying expedited processing. *See Am. Oversight*, 292 F. Supp. 3d at 504 (detailing "DOJ denied plaintiff's request for expedited processing" and each DOJ component "sent American Oversight a letter explaining their reasons for denial"); *see also Al-Fayed v. CIA*, No. 00-2092 (CKK), 2000 WL 34342564, at *1 (D.D.C. Sept. 20, 2000) (detailing

15

"all of the agencies have responded with denials" to Plaintiffs' "application for expedited processing").

In contrast, Defendants ask this court to defer to reasoning advanced only now in litigation regarding the meaning of § 16.5(e)(1)(iv). *See* Opp'n at 1. Defendants argue that *American Oversight* and *Brennan Center*[26] support their construction, *see* Opp'n at 16, but Defendants' arguments are contradicted by DOJ's interpretation of the regulation's meaning in both cases, undermining their claim to deference. *Shieldalloy*, 768 F.3d at 1208-09 (when litigating position "conflicts with prior interpretations" deference is not warranted). DOJ has not previously interpreted § 16.5(e)(1)(iv) to require defining a "matter" at a level of great particularity that parses each aspect of each request to find that each aspect is itself directly connected to a matter of exceptional media interest raising questions of governmental integrity.

For example, although DOJ did not grant expedited processing in *American Oversight*, DOJ's practice in that case confirms that Defendants have previously construed a "matter" under § 16.5(e)(1)(iv) to be the overarching "subject under consideration,"[27] rather than each constituent government activity within that subject. There, Plaintiff American Oversight sought a variety of "different categories of records," Opp'n at 16, concerning the newly announced nominee for Solicitor General Noel Francisco, including records on any conflicts and ethics waivers issued to Francisco, his recusals, and a number of different records on his participation in litigating the Trump Administration's "travel ban." *Am. Oversight*, 292 F. Supp. 3d at 503 n.2. Despite the variety of records sought, DOJ nevertheless identified the "matter" for purposes of § 16.5(e)(1)(iv) as Francisco's "nomination," i.e., the overarching subject under consideration. *See id.* at 506-07

---

[26] Defendants cite additional cases, but as discussed *infra*, Defendants' arguments are grounded in inapposite authority.

[27] *Supra Merriam-Webster*, p. 3-4.

(quoting DOJ Declaration identifying "the matter attracting media interest (the nomination)" but concluding the media coverage of that matter did not raise ethical questions). DOJ's analysis in *American Oversight* is consistent with defining the "matter" here to be the overarching subject of the Trump Administration's recent handling of the Epstein case and its files, not finding that each individual government activity related to that subject is its own "matter" to be evaluated.

*Brennan* further confirms that DOJ has previously considered a "matter" to be an overarching subject. Notably, there, DOJ granted the Brennan Center's request for expedited processing under § 16.5(e)(1)(iv) before the Center filed its lawsuit.[28] DOJ so granted notwithstanding the fact that the Center sought a variety of "different categories of records," Opp'n at 16, concerning the overarching subject of the "2020 Census," including those "pertaining to":

- o  calculating the 2020 national population;
- o  calculating 2020 state population totals;
- o  processes for and reporting on population data to the President;
- o  processes for and reporting on population data to Congress;
- o  changes to multiple Census Bureau policies; and
- o  communications between the Census Bureau with any of nearly 50 individuals and/or entities.

*See Brennan Ctr. for Just. v. Dep't of Com.*, No. 1:20-cv-02674, ECF No. 20-1, at 51-62 (D.D.C. Oct. 13, 2020) [Brennan Center's FOIA Request]. Defendants here object that DFF did "not attempt[] to justify each request with specificity" but instead "provide[d] general analysis and questions." Opp'n at 17. But DFF's requests are more specific and tailored than the requests DOJ granted in *Brennan*. And DOJ granted the Brennan Center's expedition requests despite their much higher level of generality related broadly to the conduct and planning for the U.S. Census. *Supra* note 28.

---

[28] *See Brennan Ctr. for Just. at N.Y.U. Sch. of Law v. Dep't of Com.*, No. 1:20-cv-02674, ECF No. 20-1, ¶ 9 (D.D.C. Oct. 13, 2020) (Agency declaration that DOJ granted expedited processing under § 16.5(e)(1)(iv) on September 4, 2020, and Plaintiff filed its complaint on September 21, 2020).

Finally, Defendants rely on inapposite language from the D.C. Circuit's opinion in *Al-Fayed v. CIA* to advance their litigating position that § 16.5(e)(1)(iv) requires DFF to show that each "particular aspect" of each records request independently satisfies § 16.5(e)(1)(iv)'s expedition criteria. Opp'n at 15-16. As Defendants themselves acknowledge, that "particular aspect" language derives from *Al-Fayed*'s construction of FOIA's *statutory* "compelling need" prong, 5 U.S.C. § 552(a)(6)(E)(i)(I). *See Al-Fayed*, 254 F.3d at 310 (considering "whether requestors have demonstrated 'urgency to inform,' *and hence 'compelling need*'" (emphasis added)). *Al-Fayed* expressly recognized that expedited processing is available "*not only* 'in cases in which the person requesting the records demonstrates a compelling need,' *but also* 'in other cases determined by the agency,'" and that the criteria for granting expedition in those "other cases" can be broader than the "compelling need" standard. *Id.* at 307 n.7 (emphasis added). Courts within this district have, accordingly, declared that "a requester is not required to demonstrate a 'compelling need' to qualify for expedited processing under [§ 16.5(e)(1)(iv)]." *ACLU*, 321 F. Supp. 2d at 31 n.9. Defendants, therefore, cannot rely on *Al-Fayed*'s construction of "compelling need" to craft a novel particularity requirement here that conflicts with past agency interpretations of § 16.5(e)(1)(iv).[29]

In sum, the plain text of DOJ's regulation establishes that DFF's requests concern a matter of extraordinary media coverage containing numerous questions of governmental integrity. And

---

[29] For these reasons, Defendants' reliance on *Electronic Privacy Information Center v. Department of Defense* is likewise inapposite. *See* 355 F. Supp. 2d 98, 102 (D.D.C. 2004) (applying *Al-Fayed's* "compelling need" construction in compelling need case). Defendants also cite the "compelling need" case *Heritage Foundation v. Department of State*, but there, the only agency to consider expedited processing under its "widespread and exceptional media interest" regulation, granted it before the lawsuit, evidencing that the criteria for expedited processing "in other cases determined by the agency" can be broader than in "compelling need" cases. *See* No. 24-cv-2862, 2024 WL 4607501, at *3 (D.D.C. Oct. 29, 2024).

past agency practice shows that the evidence DFF has submitted to the agency concerns a single matter warranting expedition and is sufficiently tailored to that matter under the agency's longstanding interpretation of its regulation. Defendants' attempts to develop a new particularity requirement before this court turn on inapposite arguments and are, thus, unavailing. Of course, even if Defendants were afforded deference as discussed above *supra* Sec. I, DFF's requests *still* merit expedited processing under any reasonable application of their expedited processing regulation.

## CONCLUSION

For the foregoing reasons, Plaintiff DFF respectfully requests that the Court grant DFF's motion for summary judgment and order Defendants to expedite processing of DFF's requests for records concerning the Trump Administration's handling of the Epstein case and case files, providing determinations and non-exempt portions of responsive records as soon as is practicable.

Dated: September 16, 2025                    Respectfully submitted,

                                             /s/ *Daniel A. McGrath*

                                             Daniel A. McGrath
                                             (D.C. Bar No. 1531723)
                                             Amy C. Vickery
                                             (admitted pro hac vice)
                                             Robin F. Thurston
                                             (D.C. Bar No. 7268942)
                                             Democracy Forward Foundation
                                             P.O. Box 34553
                                             Washington, D.C. 20043
                                             (202) 448-9090
                                             dmcgrath@democracyforward.org
                                             avickery@democracyforward.org
                                             rthurston@democracyforward.org