UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEMOCRACY FORWARD FOUNDATION,**<br><br>       Plaintiff,<br><br>    v.<br><br>**DEPARTMENT OF JUSTICE**, *et al.*,<br><br>       Defendants. | No. 25-cv-2597 (TSC) |

### MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") case, Democracy Forward seeks expedited review of FOIA requests regarding the Justice Department's handling of files related to the Jeffrey Epstein investigation. After the Department constructively denied its expedited review requests, Democracy Forward filed this lawsuit and moved for summary judgment. Because Democracy Forward has demonstrated that the Department's handling of the Epstein files is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv), its FOIA requests are largely entitled to expedited review. But because its requests are partially overbroad, the court will GRANT IN PART and DENY IN PART Democracy Forward's Motion for Summary Judgment.

At the outset, the court notes that Plaintiff's Notice of Recent Developments, ECF No. 16, does not affect the court's review of the instant motion. In reviewing requests for expedited processing, the court is limited to "the record before the agency at the time" of the denial or constructive denial. 5 U.S.C. § 552(a)(6)(E)(iii). Therefore, although recent Congressional

activity and media coverage may support Democracy Forward's claim regarding "the public's urgent need for access" to the information Democracy Forward seeks, Pl.'s Notice at 3, the court cannot and will not consider it. Moreover, recent legislation concerning the release of the Epstein files does not moot this case because Democracy Forward seeks records concerning the Department's *handling* of the files—records that are distinct from the files themselves.

## I.   BACKGROUND

### A. Legal Background

FOIA requires agencies to disclose certain government records to any person who validly requests them. *See* 5 U.S.C. § 552(a)(3). In general, agencies process FOIA requests on a "first-in, first-out" basis. *Am. Oversight v. DOJ*, 292 F. Supp. 3d 501, 505 (D.D.C. 2018). Congress recognized, however, that some requests merit faster attention. In 1996, it amended FOIA to provide for expedited processing of more urgent requests. *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001) (citing Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104–231, § 8, 110 Stat. 3048, 3051–52 (codified as amended at 5 U.S.C. § 552(a)(6)(E))).

Under the amended Act, agencies must expedite review in two circumstances: (1) when "the person requesting the records demonstrates a compelling need," and (2) "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). This "latter provision gives an agency latitude to expand the criteria for expedited access beyond cases of compelling need" by promulgating regulations. *See Al-Fayed*, 254 F.3d at 307 n.7 (cleaned up). The Justice Department has done so; it established regulations providing for the expedited processing of FOIA requests involving "matter[s] of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). "The Department has interpreted [this regulation] to require that the

same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the government's integrity that affect public confidence." *Am. Oversight*, 292 F. Supp. 3d at 505 (cleaned up).

If an agency grants expedited review, it must process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). If it denies or fails to timely address a request for expedited processing, the aggrieved party may seek judicial review. *Id.*

B. **Factual Background**

In July 2019, financier Jeffrey Epstein was indicted on federal charges for sex trafficking underage girls. Defs' Resp. to Pl.'s SOF ¶ 1, ECF No. 9-1 ("Defs' Resp."). Many believe that federal investigators have a list of powerful clients to whom Epstein trafficked underage girls. *Id.* ¶ 7. During the 2024 presidential campaign, then-candidate Donald Trump appeared to credit this belief and said he would "probably" release the list if elected. *Id.* ¶ 8.

In February 2025, after President Trump's election, Attorney General Pam Bondi was asked whether the Justice Department would "really" "be releasing the list of Jeffrey Epstein's clients." Defs' Resp. ¶ 9. Attorney General Bondi replied: "It's sitting on my desk right now to review. That's been a directive by President Trump." *Id.* Shortly thereafter, the Justice Department released what it styled the "first phase" of declassified Epstein files. *Id.* ¶ 10. This "first phase" disclosure did not include a client list, and most of the documents had already been made publicly available. *Id. Forbes* reported[1] that this disclosure "frustrated lawmakers and conservative activists," who accused the Trump Administration of breaking its promise to release

---

[1] This article and the other articles cited in this opinion were included in Democracy Forward's expedited-review request to the Justice Department and are therefore part of the record. *See* 5 U.S.C. § 552(a)(6)(E)(iii) (limiting judicial review to "the record before the agency at the time" of the denial or constructive denial).

the Epstein files.  McGrath Decl. – Ex. 3, ECF No. 4-2 (citing Conor Muray, *Epstein Files Land No New Revelations—Despite Big Promises Throughout Campaign*, Forbes (Mar. 1, 2025), https://perma.cc/ND5U-6QFG).

*The New York Times* reported that in response to "mounting clamor" for release of the files, the Justice Department embarked in spring 2025 on a "frenetic scramble," deploying "hundreds of employees to scour the Jeffrey Epstein files with a single goal in mind—find something, anything, that could be released to the public."  McGrath Decl. – Exs. 1, 2, ECF No. 4-2 (citing Adam Goldman & Alan Feuer, *How a Frantic Scouring of the Epstein Files Consumed the Justice Department*, N.Y. Times (July 24, 2025), https://perma.cc/RLL2-2BVP).

But then, in July 2025, the Justice Department reversed its position on disclosing the Epstein files and on the existence of a client list.  The Department announced that "no further disclosure . . . would be appropriate" and that after "an exhaustive review" of the files by FBI agents there was no "client list."  Defs' Resp. ¶ 11.  That same month, *The Wall Street Journal* reported that Attorney General Bondi had told President Trump in May 2025 that his name appeared in the files.  *Id.* ¶ 14; *see also* McGrath Decl. – Exs. 1, 2 (citing Sadie Gurman et al., *Justice Department Told Trump in May That His Name Is Among Many in the Epstein Files*, Wall St. J. (July 23, 2025), https://perma.cc/8VE5-QKWD).

Several news outlets reported that the Justice Department's July announcement triggered a swirl of controversy.  *Reuters* wrote that "the uproar . . . could undermine public trust in the Trump administration," and that Attorney General Bondi's "change in position" "by saying there was no list of Epstein clients after previously implying that one existed . . . unleashed a tsunami of calls for her resignation."  David Morgan, *Epstein Furor Undermines Public Trust, Republican Election Hopes, Two U.S. Lawmakers Say*, Reuters (July 27, 2025),

https://perma.cc/7H7D-T95C.  *The New York Times* reported that the Department's July announcement "prompted a furious backlash" and "fueled further suspicion that something was being hidden."  Maggie Haberman & Glenn Thrush, *Attorney General Told Trump His Name Appeared in Epstein Files*, N.Y. TIMES (July 23, 2025), https://perma.cc/T4BE-HQXG.  CNN wrote that the timing of the Department's announcement suggested that its "rather abrupt shift" was due to President Trump learning that his names appeared in the Epstein files.  Aaron Blake, *Timeline Suggests Trump Team Changed Its Tune on Epstein Files After Trump Was Told He Was in Them*, CNN (July 24, 2025), https://perma.cc/7BFF-6KV5.  Other similar articles in prominent outlets abound.  *See* McGrath Decl. – Exs. 1, 2 (collecting articles).

### C. Procedural History

On July 25, 2025, Democracy Forward filed several FOIA requests with the Justice Department and various component agencies seeking records regarding the "(1) the recent review of the Epstein matter case files, (2) the Attorney General's public statements about the contents of the Epstein matter files," and "(3) communications among high-ranking [Department] officials concerning the Epstein matter following intense media coverage and public interest concerning . . . the decision not to release files in the matter."  McGrath Decl. – Ex. 1 at 9; *see generally id.* at 17–43.  Specifically, those requests sought:

- "All materials prepared or compiled by DOJ officials for Attorney General Bondi's review regarding the Jeffrey Epstein matter."  *Id.* at 17.
- "All briefing materials . . . prepared for Attorney General Bondi for her meetings with President Trump regarding the Jeffrey Epstein matter, including her May 2025 meeting at the White House."  *Id.* at 18.

- "All records reflecting communications" between the Attorney General, the Deputy Attorney General, the Associate Attorney General, and senior aides to the Attorney General and Deputy Attorney General "regarding . . . the Jeffrey Epstein matter." *Id.* at 22–23.

- "All records reflecting communications" between the FBI Director, Deputy Director, Associate Deputy Director, and senior aides to the Director and Deputy Director "regarding . . . the Jeffrey Epstein matter." *Id.* at 28–29.

- "All records reflecting communications" between a subset of the aforementioned DOJ and FBI officials "regarding the Jeffrey Epstein matter." *Id.* at 33–34.

- Records reflecting all "directives, guidance, and instructions" provided by FBI leadership to FBI personnel assigned "to assist with the Epstein-related records review between March 14, 2025 and March 30, 2025"; information regarding "all staff assigned to review Epstein-related records"; and "all records reflecting all mentions of President Trump within the Epstein-related records review."

On July 28, 2025, Democracy Forward submitted an additional FOIA request for "all correspondence between Donald J. Trump and Jeffrey Epstein." McGrath Decl. – Ex. 2 at 45. On that same day, Democracy Forward also requested that the Justice Department expedite the processing of its July 25 and July 28 FOIA requests. McGrath Decl. – Ex. 1 at 9; McGrath Decl. – Ex 2 at 46. Democracy Forward cited 28 C.F.R. § 16.5(e)(1)(iv), which, as noted, requires expedited review of requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." It claimed that there was "widespread media reporting" on the Department's handling of the Epstein files, which raised "numerous questions about the government's

integrity." McGrath Decl. – Ex 1. at 12.  The questions include whether "Attorney General Bondi misled the American people in representing that the 'client list' was on her desk and ready for review," and whether the Department had "reversed course on the decision to disclose the Epstein matter case files out of a desire to cover-up the content within," including any mention of President Trump.  *Id.* at 12–13.  On August 7, 2025, Democracy Forward sent a follow-up letter to Department officials, reiterating its request for expedited review under § 16.5(e)(1)(iv).  McGrath Decl. – Ex 3. at 57.

On August 8, 2025, Democracy Forward filed this lawsuit, *see* Compl., ECF No. 1, treating the passage of ten calendar days from its request for expedited review as a constructive denial of that request.  *See* 28 C.F.R. § 16.5(e)(4) ("A component shall notify the requester within 10 calendar days of the receipt of a request for expedited processing of its decision whether to grant or deny expedited processing.").  The following month, Democracy Forward moved for summary judgment, asking this court to order the Justice Department and the FBI to expedite the processing of its FOIA requests.  *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 18, ECF No. 4-1 ("Pl.'s MSJ").

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(a), "[s]ummary judgment is appropriate 'only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doe v. District of Columbia*, 151 F.4th 435, 445 (D.C. Cir. 2025) (quoting *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016)).  As the party seeking expedited review of its FOIA requests, the burden is on Democracy Forward to show that expedition is warranted. *See Al-Fayed*, 254 F.3d at 305 n.4.

### III.   DISCUSSION

#### A. Applicable Standards

As an initial matter, the parties dispute whether deference is owed to the Department's constructive denial of Democracy Forward's expedited processing requests.  *See* Opp'n at 13; Reply at 15.  The Government points to *Al-Fayed v. CIA*.  There, the D.C. Circuit held that while failure to grant expedited processing under the statutory "compelling need" standard is reviewed *de novo*, courts should defer to an "agency's reasonable interpretation of its own [] regulations" regarding "other cases" that merit expedited review beyond "compelling need."  *Al-Fayed*, 254 F.3d at 307 & n.7.  Because this case concerns an expedited-review request under such a regulation, the Government contends that this court "should review the constructive denial more deferentially than it would one for lack of compelling need."  Opp'n at 13.

In *Kisor v. Wilkie*, however, the Supreme Court clarified that "not every reasonable agency reading" of its own regulations is entitled to deference.  588 U.S. 558, 576 (2019).  "[A] court may defer to only an agency's authoritative and considered judgments," not "*ad hoc* statements or *post hoc* rationalizations."  *Id.* at 584.  Thus, to receive deference, there must be an "authoritative pronouncement" setting forth the interpretation—such as an official staff memorandum published in the Federal Register—that reflects the agency's "fair and considered judgment."  *Id.* at 576–79 (cleaned up).

There is no such "authoritative pronouncement" here.  *Kisor*, 588 U.S. at 577 (quoting *N.Y.S. Dep't of Soc. Servs. v. Bowen*, 835 F.2d 360, 365–66 (D.C. Cir. 1987)).  To the contrary, because this case involves a constructive denial, the court has no agency reasoning to which it could defer—it has it only the *post hoc* arguments of Government counsel.  Accordingly, the

court will not give blanket deference the Department's constructive denial of Democracy Forward's expedited-processing requests.

That said, the court agrees with Government counsel, *see* Opp'n at 14–15, that to qualify for expedited review under 28 C.F.R. § 16.5(e)(1)(iv), the requestor must show that there is widespread and exceptional media interest focused on the specific matter that raises questions about government integrity, and that this specific matter raises possible ethics issues that affect public confidence. *See Am. Oversight*, 292 F. Supp. 3d at 507–08 (cleaned up); *see also Rolling Stone LLC v. DOJ*, 739 F. Supp. 3d 237, 244 (S.D.N.Y. 2024) ("It is not sufficient that the request concerns an individual as to whom there is widespread and exceptional media interest if the subject as to which there is public interest is not one that also raises questions about the government's integrity."); *cf. Elec. Priv. Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98, 102 (D.D.C. 2004) ("The fact that Plaintiff has provided evidence that there is some media interest in . . . an umbrella issue does not satisfy the requirement that Plaintiff demonstrate interest in the specific subject of Plaintiff's FOIA request."). In *American Oversight*, for example, extensive media coverage regarding the Solicitor General's nomination generally was not sufficient to justify an expedited-processing request regarding the Solicitor General's potential ethics issues because the media coverage of the nomination did not raise the ethics issues specifically. 292 F. Supp. 3d at 508. Applying these principles here, Democracy Forward must show that there is widespread and exceptional media interest not in the Epstein matter generally, but specifically in the Justice Department's reversal of its position regarding the disclosure of the Epstein files, and that the Department's reversal raises possible questions about government integrity.

The Government errs however by demanding even more specificity. It contends that Democracy Forward must demonstrate exceptional media interest not just in the Justice

Department's handling of the files, but in each discrete aspect of its FOIA request. *See* Gov't Opp'n 17–18. The Government argues, for example, that because Democracy Forward seeks the list of FBI agents who were assigned to review the Epstein files in spring 2025, Democracy Forward must show that there is "a particular interest in the identities and contact information for agents purportedly assigned to review Epstein-related records." *Id.* at 18.

To support this narrow approach, the Government cites to *Al-Fayed*, in which the D.C. Circuit separately analyzed expedited review requests for records related to (1) whether U.S. intelligence tapped Princess Diana's telephone before her death in 1997, (2) whether U.S. immigration authorities "denied entry to an informant with information about the involvement of MI6" in Diana's death, and (3) the U.S. Attorney's decision to not prosecute the alleged perpetrator of a 1998 fraud on the father of Diana's romantic partner Dodi Al-Fayed. 254 F.3d at 310. Referring to the third request, the D.C. Circuit noted that there was no evidence of substantial public interest "in this particular aspect of plaintiffs' allegations." *Id.* at 311. Setting aside the fact that *Al-Fayed* applied the more demanding "compelling need" standard, the three requests at issue in that case concerned different matters that were more loosely linked. Here, by contrast, the FBI's alleged review of the Epstein files in spring 2025 is part and parcel of the Department's reversal of its position between February and July 2025 on whether to disclose additional files. *See* McGrath Decl. – Exs. 1, 2 (citing Adam Goldman & Alan Feuer, *How a Frantic Scouring of the Epstein Files Consumed the Justice Department*, N.Y. TIMES (July 24, 2025), https://perma.cc/RLL2-2BVP). Government counsel slices Democracy Forward's requests too thin by attempting to depict different aspects of the same matter as separate matters.

**B. Democracy Forward's Entitlement to Expedited Processing**

The court turns now to whether Democracy Forward has demonstrated "widespread and exceptional media interest" in the Justice Department's change in position regarding the release of the Epstein files,[2] and whether the coverage of this matter raises "possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Although this is a challenging standard, Democracy Forward has met it.

a. <u>Widespread and Exceptional Media Interest</u>

To start, Democracy Forward has demonstrated "widespread and exceptional media interest" in the Justice Department's reversal regarding the disclosure of the Epstein files between February and July 2025. 28 C.F.R. § 16.5(e)(1)(iv). In evaluating whether there is such interest, courts in this District consider (1) the number of articles cited in the expedited processing request, (2) the dates those articles were published, (3) whether those articles were published in a variety of publications, and (4) whether those articles indicate that there is widespread national attention on the issue. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004) ("Although plaintiffs presented only a handful of articles, they were published in a variety of publications, and repeatedly reference the ongoing national discussion about the Patriot Act and section 215."); *see also Brennan Ctr. v. Dep't of Comm.*, 498 F. Supp. 3d 87, 97 (focusing on the number of articles and the "variety of sources").

---

[2] Democracy Forward also argues that its requests are justified by widespread and exceptional media interest in the Department's recent involvement with Ghislane Maxwell. Because Democracy Forward's requests for expedited review are supported by the widespread and exceptional media interest in the Department's handling of the Epstein files alone, the court need not reach this additional issue, which also would not save the portions of the requests that suffer from overbreadth. *See infra* Part III.C.

Democracy Forward's July 28 expedited review requests cited dozens of articles dated between February and July 2025 concerning the Justice Department's handling of the Epstein files. *See* McGrath Decl. – Ex 1. at 10–14; McGrath Decl. – Ex. 2 at 46–50. These articles appeared in a range of prominent newspapers, including *The New York Times*, *The Wall Street Journal*, *USA Today*, and *The Washington Post*; major wire services, including *The Associated Press* and *Reuters*; and well-known broadcast outlets including ABC, CBS, NBC, NPR, CNN, and Fox News. *See* McGrath Decl. – Ex 1. at 10–14; McGrath Decl. – Ex. 2 at 46–50. The articles indicate that this topic has dominated the national conversation and is ongoing. For example, Fox News reported on the "clamor for immediate transparency" and quoted a House Republican lawmaker as stating, "this issue is not going away." Elizabeth Elking, *"Not Going Away": Inside the Epstein Drama That's Thrown House GOP Into Chaos*, FOX NEWS (July 22, 2025), https://perma.cc/KX6C-G39A. A Quinnipiac poll conducted in July indicated that 80% of American voters had an opinion on "the way the Trump Administration is handling the Jeffrey Epstein files." QUINNIPIAC UNIV., *63% of Voters Disapprove of the Trump Administration's Handling of the Jeffrey Epstein Files* (July 16, 2025), https://perma.cc/K5BM-JPRR. The court is hard pressed to think of stronger evidence that this issue has attracted widespread and exceptional media interest.

      b. <u>Possible Questions About the Government's Integrity</u>

Democracy Forward has also established that this widespread media coverage raises "possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). As the plain text of the regulation makes clear, a requestor need not point to actual evidence of government misconduct; they need only show *possible questions* regarding government integrity. "The primary way to determine whether such possible questions exist is

by examining the state of public coverage . . . and whether that coverage surfaces possible ethics issues" that affect public confidence. *Am. Oversight*, 292 F. Supp. 3d at 508.

Democracy Forward has cleared this bar. As its submission to the Justice Department showed, prominent outlets have reported that the Department's change in position has generated widespread controversy that has undermined public trust. *See, e.g.*, David Morgan, *Epstein Furor Undermines Public Trust, Republican Election Hopes, Two U.S. Lawmakers Say*, REUTERS (July 27, 2025), https://perma.cc/7H7D-T95C. *The New York Times* wrote that it "fueled further suspicion that something was being hidden." Maggie Haberman & Glenn Thrush, *Attorney General Told Trump His Name Appeared in Epstein Files*, N.Y. TIMES (July 23, 2025), https://perma.cc/T4BE-HQXG. *Newsweek* similarly reported that "the controversy over transparency and accountability in the Epstein investigation remains a focal point for the public, with polls indicating most Americans—across party lines—believe the federal government is concealing evidence related to the case." Anna Commander, *Republican Targeted by Trump Says Epstein Issue "Not Going to Go Away,"* NEWSWEEK (July 23, 2025), https://perma.cc/8YHB-FUNE. And NPR reported that the Justice Department's handling of the matter has resulted in "credibility problems" for the Department. *See* Sacha Pfeiffer et al., *DOJ Faces Credibility Questions As It Investigates Jeffrey Epstein*, NPR (July 25, 2025), https://perma.cc/M3WE-C7D8. In sum, the media coverage cited by Democracy Forward shows that the Department's handling of the Epstein files raises possible questions regarding the government's integrity.

C. The Overbreadth of Democracy Forward's Requests

To qualify for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv), a request must "involve . . . a matter of widespread and exceptional media interest." The regulation's use of the

term "involve" indicates that the request must be reasonably tailored to the matter generating media attention. *See* MERRIAM-WEBSTER DICTIONARY, "Involve," https://perma.cc/LGR9-N5GU (last accessed Nov. 17, 2025) (defining "involve" to mean "relate closely"). This requirement is consistent with the need for "a narrow application" of the expedited review provisions. *Al-Fayed*, 254 F.3d at 310. "Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment" and "also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Id.* (cleaned up). Without a tailoring requirement, requestors could submit omnibus requests that seek some expedition-worthy categories of records, but also sweep in swaths of unworthy categories.

The court is largely satisfied that Democracy Forward's FOIA requests are closely related to the Department's handling of the Epstein files. The request for "records reflecting all correspondence between Donald J. Trump and Jeffrey Epstein" is plainly tied to the concern discussed in the media that the Justice Department reversed its position on the disclosure of the Epstein documents only after Attorney General Bondi reportedly informed the President that his name appeared in the files. The request for directives and guidance issued to FBI employees tasked with reviewing the Epstein files in spring 2025 is likewise relevant to why the Department reversed its position on disclosure between February and July 2025.

The court agrees with the Government, however, that the requested search terms "whistleblower" and "flight logs" are overbroad. Opp'n at 18. Although it is true that sufficiently tailored requests will often "capture a broader set of documents" than what is truly responsive, *see Brennan Ctr.*, 498 F. Supp. 3d at 98, Democracy Forward did not demonstrate in

its requests that the general search terms "whistleblower" and "flight logs" are tailored to the Department's handling of the Epstein files. The court will therefore deny the Motion for Summary Judgment with respect to these overbroad search terms only. Otherwise, Democracy Forward has shown that its requests are entitled to expedited review.

## IV.   CONCLUSION

For the reasons explained above, the court will GRANT IN PART and DENY IN PART Democracy Forward's Motion for Summary Judgment. The court will order Defendants to expedite processing of Democracy Forward's July 25 and July 28 FOIA requests, except with respect to the overbroad search terms "whistleblower" and "flight logs."

Date: November 24, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge